IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 23-cr-00419-RMR

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.  CHRISTOPHER CARL MEIER,

    Defendant.

---

### UNITED STATES' RESPONSE AND OBJECTIONS
### TO PRESENTENCE INVESTIGATION REPORT

---

The United States of America, by and through Acting United States Attorney Matthew T. Kirsch and Assistant United States Attorney Alecia L. Riewerts respectfully responds to the Presentence Investigation Report ("PSR") [ECF #30] as follows:

<u>Objections Impacting the Guideline Calculation</u>

*The USSG § 2G2.1 Cross-Reference Applies to Count 3*

The government agrees with Probation's assessment that Count 1 groups with, at a minimum, Count 3 of the Indictment. However, the government's position is that each of the remaining counts of the Indictment should be calculated utilizing the USSG § 2G2.1 cross-reference. Because Probation agrees that the cross-reference applies to Counts 2, 4, 5, and 6 of the Indictment, the government focuses its argument on the

1

appropriate guideline calculation for Count 3.  The basis for Count 3 of the Indictment is content associated with the defendant's "Productions Index."  PSR at ¶¶34-38.[1]

While the guideline for a violation of 18 U.S.C. § 2252A(a)(2) is USSG § 2G2.2, "[i]f the offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct," USSG § 2G2.1 is to be applied "if the resulting offense level is greater than that determined" under USSG § 2G2.2.  USSG § 2G2.2(c)(1).  The government respectfully disagrees with Probation's assertion that there is "a lack of evidence that the defendant produced the images/videos" related to Count 3.  PSR at ¶92, FN2.  The PSR provides ample support for the application of the cross-reference to USSG § 2G2.1 by a preponderance standard in relation to Count 3 of the Indictment as further described below.

The defendant's "profile page included a banner that read '[Defendant's username] Productions' in stylized font"—the defendant made his status on the website in question absolutely clear.  PSR at ¶30.  The defendant held himself out as a "capper," which as explained in detail in the PSR is "a person who takes screen captures of videos depicting minors engaging in sexual activity and creates or preserves those screen captures for later distribution."  *Id.* at ¶32.  The PSR further describes that "[c]appers frequently entice these minors to engage in sexual activity for this purpose,"

---

[1] The real name of the website at issue, the defendant's username on that website, and certain other details are omitted from this filing to protect ongoing investigations.

for example by "impersonat[ing] a minor of the same or similar age as the intended victim." *Id.* It is common for a capper, when attempting to induce boys "to perform sexually on web camera cappers often pretend to be a young girl approximately the same age as the boy victim." *Id.* This way, "the boy victim thinks that he is having a sexual interaction with a girl his own age." *Id.*

The PSR goes on to describe how the website contained a forum called "Webcam" with a subforum titled "Index of Capper." *Id.* at ¶34. The index included a link for "[Defendant's username] Productions' Index." *Id.* At this link, there was a post made by the defendant that "included a list of videos posted and purportedly produced" by the defendant. *Id.* There were several names, preview images and download links available associated with this post for "several dozen videos. *Id.* The preview images for each of the boys described in the post consisted of "'contact sheets'"—*i.e.*, a 6x6 display of images that generally include screenshots taken from a longer video—and they depict young boys masturbating, displaying their naked genitals, and in one case, engaging in oral sex with one another." *Id.* Importantly, the defendant also included information related to each of the victims he used to produce child pornography in the links, to include "a boy's name, an age designation such as '12yo,' a geographical location, a date, and often a sexually explicit description." *Id.* Many of the videos contained further indicia that the defendant had created them, including the "'[Defendant's username] Productions' logo and imagery…" *Id.* at ¶36.

The victim interviews summarized in the PSR likewise support the inference that the defendant was the producer of the content underlying Count 3. Several of the

3

victims told law enforcement that they met a "girl" online who directed them to disrobe and/or masturbate on webcam, but she either never appeared on camera or never spoke. *See id.* at ¶¶35-36, 48, 53, 67-68. Not only are these victim accounts consistent with one another, they are also consistent with the defendant's online suggestions that he enticed minor boys to perform sexually using images or video of a "girl." *See, e.g., id.* ¶¶40, 42, 45, 64, 73.

The defendant's *modus operandi* was consistent throughout his sexual exploitation of the minor victims he met online; this, combined with numerous other factors set forth in the PSR—including the fact that all the videos were categorized as the defendant's "*productions*" in his capacity as a "capper," the level of detail that he includes in the file names of his posts pertaining to each victim associated with Count 3 of the Indictment, his online admissions that he produced the content, the victims' statements about how the videos were created, the consistency between the victim statements and the defendant's online admissions, and the defendant's personal branding on the video content itself—provides more than proof by a preponderance standard that he preyed upon these victims online and used them for the purpose of producing child pornography.

*The Guideline Calculation for Count 3*

Altogether, there were 35 minor victims whose images were available through them "[Defendant's username] Productions" index the defendant created. *Id.* While a "pseudo-count" could be calculated for each of the minor victims depicted in videos

pertaining to Count 3 of the Indictment, the government focuses on seven victims whose interviews are included in paragraphs 35 and 36 of the PSR:

- Victim A:  The defendant posted a contact sheet for a video entitled "[CFP]Omegle - [Victim A] 14yo – USA - 2015.04.13.mp4," which depicted a teenage boy naked and masturbating. The "CFP" referenced in the title refers to "[Defendant's username] Productions."  Victim A was identified and told law enforcement that when he was 14 years old that he regularly visited the video-chatting website Omegle.  He reported that someone with a black screen asked him to disrobe and masturbate on video.  Notably, the defendant provided advice to others about how to produce sexually explicit videos depicting children; he indicated that he had used Omegle, stating that "Omegle caps are quickest, but provide very poor video resolution. PSR at ¶73.  The government's position is that the adjusted offense level for Victim A is 40, as the base offense level is 32 and the following enhancements apply:  +2 levels because the minor had not attained the age of sixteen years pursuant to USSG § 2G2.1(b)(1)(B), +2 levels for sexual act/contact pursuant to USSG § 2G2.1(b)(2)(A), +2 levels for knowingly engaging in distribution of the content pursuant to USSG § 2G2.1(b)(3), and +2 levels for use of a computer/concealment of identity pursuant to USSG § 2G2.1(b)(6).

- Victim B:   The defendant posted a contact sheet for a video entitled "[CFP]SkypeHD - [Victim B] 12yo – USA - 2016.06.13.mp4," which depicts a teenage boy naked and masturbating.  This victim was identified and told law

5

enforcement that when he was approximately 12 or 13 years old, he used Skype to communicate with someone he thought was a female.  The female only communicated with him via chat box.  The "female" directed him to send nude images over Skype and to participate in a video call.  The defendant also indicated when giving advice to other users on how to produce sexually explicit contact that he had utilized Skype to produce child pornography, sharing "[b]est to bring the boys to skype though if you wanna cap HIGH RES caps, otherwise they just don't look so good."  PSR at ¶73.  The government's position is that the adjusted offense level for Victim B is 40, as the base offense level is 32 and the following enhancements apply:  +2 levels because the minor had not attained the age of sixteen years pursuant to USSG § 2G2.1(b)(1)(B), +2 levels for sexual act/contact pursuant to USSG § 2G2.1(b)(2)(A), +2 levels for knowingly engaging in distribution of the content pursuant to USSG § 2G2.1(b)(3), and +2 levels for use of a computer/concealment of identity pursuant to USSG § 2G2.1(b)(6).

- Victim C:  The defendant posted a contact sheet depicting Victim C for a video entitled "[CFP]SkypeHD - [Victim C] 15yo – USA - 2020-08-23.mp4," depicting a teenage boy who was depicted naked and masturbating.  This victim was also identified; he stated that he would have been 16 on the date listed in the file name.   He told law enforcement that he chatted over different applications with teenage girls and he sent them multiple images and videos of himself nude or engaging in sex acts.  He reported that one particular "girl" never showed herself on camera and repeatedly made excuses as to why she would

not. The government's position is that the adjusted offense level for Victim C is 38, as the base offense level is 32 and the following enhancements apply: +2 levels for sexual act/contact pursuant to USSG § 2G2.1(b)(2)(A), +2 levels for knowingly engaging in distribution of the content pursuant to USSG § 2G2.1(b)(3), and +2 levels for use of a computer/concealment of identity pursuant to USSG § 2G2.1(b)(6).

- Victim D:  The defendant posted a contact sheet for a video entitled "[CFP]SkypeHD - [Victim D] jerks and cums in shower 13yo - USA - 2016.06.16.mp4," depicting a teenage boy naked and masturbating in the shower and bathtub. A separate contact sheet related to this victim with a similar title depicts a teenage boy naked and masturbating as well. Victim D was identified and interviewed. He stated that he was 15 years old on the dates listed in the file names. He said that he sent nude videos and pictures of himself online to individuals he believed were females. The government's position is that the adjusted offense level for Victim D is 40, as the base offense level is 32 and the following enhancements apply: +2 levels because the minor had not attained the age of sixteen years pursuant to USSG § 2G2.1(b)(1)(B), +2 levels for sexual act/contact pursuant to USSG § 2G2.1(b)(2)(A), +2 levels for knowingly engaging in distribution of the content pursuant to USSG § 2G2.1(b)(3), and +2 levels for use of a computer/concealment of identity pursuant to USSG § 2G2.1(b)(6).

- Victim E:  The defendant posted a contact sheet for a video entitled "[CFP]Skype HD - [Victim E] 15yo – USA - 2020-01-21.mp4," which depicted a

7

teenage boy naked and masturbating. Victim E was identified and interviewed; he indicated that he would have been 14 on the date listed in the file name. He likewise described meeting a girl, who directed him to download Skype and disrobe in front of the camera. The "girl" never appeared live on camera and only communicated through the Skype chat function. He stated that he first started communicating with this individual when he was 13 years old. The government's position is that the adjusted offense level for Victim E is 40, as the base offense level is 32 and the following enhancements apply: +2 levels because the minor had not attained the age of sixteen years pursuant to USSG § 2G2.1(b)(1)(B), +2 levels for sexual act/contact pursuant to USSG § 2G2.1(b)(2)(A), +2 levels for knowingly engaging in distribution of the content pursuant to USSG § 2G2.1(b)(3), and +2 levels for use of a computer/concealment of identity pursuant to USSG § 2G2.1(b)(6).

- Victim F: A contact sheet depicting Victim F was posted by the defendant in conjunction with the "[Defendant's username] Productions" index post. He told law enforcement that he was 14 and 15 years old when the images he was shown were created. He stated that he did not know that he was being recorded or that the videos were on the Internet. The government's position is that the adjusted offense level for Victim F is 40, as the base offense level is 32 and the following enhancements apply: +2 levels because the minor had not attained the age of sixteen years pursuant to USSG § 2G2.1(b)(1)(B), +2 levels for sexual act/contact pursuant to USSG § 2G2.1(b)(2)(A), +2 levels for knowingly engaging

in distribution of the content pursuant to USSG § 2G2.1(b)(3), and +2 levels for use of a computer/concealment of identity pursuant to USSG § 2G2.1(b)(6).

- Victim G:  A contact sheet depicting Victim G was posted by the defendant in conjunction with the "[Defendant's username] Productions" index post.  He was identified by law enforcement and able to identify himself in images distributed by the defendant.  He told law enforcement that he chatted with strangers on the video-chatting application Omegle, but that he didn't recall any further details about the interactions.  The government's position is that the adjusted offense level for Victim G  is 38, as the base offense level is 32 and the following enhancements apply:  +2 levels for sexual act/contact pursuant to USSG § 2G2.1(b)(2)(A), +2 levels for knowingly engaging in distribution of the content pursuant to USSG § 2G2.1(b)(3), and +2 levels for use of a computer/concealment of identity pursuant to USSG § 2G2.1(b)(6).

*The Adjusted Offense Level for Count 3*

Pursuant to USSG § 2G2.1(d)(1), "[i]f the offense involved the exploitation of more than one minor, Chapter Three, Part D (Multiple Counts) shall be applied as if the exploitation of each minor had been contained in a separate count of conviction." Therefore, the government's calculation as to the Adjusted Offense Level for Count 3 is 40 and as to the minimum number of Units associated with Count 3 of the Indictment is 7 based on the guidance provided in USSG § 3D1.4.

| Victim | Adjusted Offense Level | Units |
| --- | --- | --- |
| A | 40 | 1 |

| | | |
|---|---|---|
| B | 40 | 1 |
| C | 38 | 1 |
| D | 40 | 1 |
| E | 40 | 1 |
| F | 40 | 1 |
| G | 38 | 1 |

*Total Offense Level for the Indictment*

The government's position is that the following Adjusted Offense Levels and number of Units apply when calculating the multiple count adjustment:

| Count | Adjusted Offense Level | Units |
|---|---|---|
| Count 1 | (Groups as set forth above) | |
| Count 2 | 40 | 1 |
| Count 3 | 40 | 7 |
| Count 4 | 40 | 1 |
| Count 5 | 38 | 1 |
| Count 6 | 40 | 1 |

The greatest of the Adjusted Offense Levels above is 40. Pursuant to USSG § 3D1.4, there is a five-level increase pursuant to the number of Units assigned by the amount indicated on the table and the Combined Adjusted Offense Level is 45. With acceptance of responsibility, the defendant's Total Offense Level is 42. Since the defendant's criminal history score is three, the defendant's criminal history category is II,

resulting in a total guideline imprisonment range of 360 months imprisonment to life imprisonment.

*The Life Guideline*

The government agrees with Probation's assessment that the minimum term of imprisonment for each count contained in the Indictment is 15 years and the maximum term is 40 years. PSR at ¶188. However, the government disagrees with Probation as to the total guideline imprisonment range for a life sentence. PSR at ¶190, PSR, Exhibit A ("Sent. Rec.") [ECF #30-1] at 2. While the guideline range is capped at 480 months for one count of conviction, the government's position is that a life guideline in this case is the maximum number of years to which the defendant can be sentenced if he is sentenced on all six counts consecutively. USSG § 5G1.1(a) (if "the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence"). The guideline of life in this case is therefore 40 years (480 months) for each of the six counts of conviction, totaling 240 years or (2,880 months).

<u>Objections Not Impacting the Guideline Calculation</u>

It does not appear that the special assessment under the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 ("AVAA") was assessed per count in the Sentencing Recommendation. Sent. Rec. at 2. It is the government's position that the defendant is subject to the AVAA special assessment for each of his six counts of conviction. The AVAA requires a special assessment of "not more than $35,000 on any person convicted of any other offense for trafficking in child pornography," specifically

11

excluding offenses referenced in 18 U.S.C. § 2259A(a)(1) involving the possession of child pornography.  18 U.S.C. § 2259A(a)(1) and (2).  The language in the AVAA aligns with 18 U.S.C. § 3013, which states that special assessment shall be assessed "on any person convicted of an offense" for which Probation recommended the special assessment apply to each count.  18 U.S.C. § 3013(a), Sent. Rec. at 2.

Dated this 24th day of October, 2024.

            Respectfully submitted,

            MATTHEW T. KIRSCH
            Acting United States Attorney

            By:    *s/ Alecia L. Riewerts*
            ALECIA L. RIEWERTS
            Assistant United States Attorney
            United States Attorney's Office
            1801 California St., Suite 1600
            Denver, Colorado 80202
            Telephone: (303) 454-0100
            Facsimile: (303) 454-0401
            Email: Alecia.Riewerts@usdoj.gov
            Attorney for Government

## CERTIFICATE OF SERVICE

      I hereby certify that on this 24th day of October, 2024, I electronically filed the foregoing **UNITED STATES' RESPONSE AND OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email address:

Stephanie Snyder
Email: Stephanie_Snyder@fd.org

                                                 By:   *s/ Alecia L. Riewerts*
                                                 ALECIA L. RIEWERTS
                                                 Assistant United States Attorney
                                                 United States Attorney's Office
                                                 1801 California St., Suite 1600
                                                 Denver, Colorado 80202
                                                 Telephone: (303) 454-0100
                                                 Facsimile: (303) 454-0401
                                                 Email: Alecia.Riewerts@usdoj.gov
                                                 Attorney for Government