IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO.     23-cr-00419-RMR

UNITED STATES OF AMERICA,

        Plaintiff,

v.

CHRISTOPHER CARL MEIER,

        Defendant.

---

### MOTION FOR VARIANT SENTENCE OF 240 MONTHS[1]

---

        Chris Meier has been isolated, alone in his own world, for most of his life. When he was a toddler, he stopped speaking for several years.[2] His mother describes how he would moan and rock whenever there was any change in his routine, and every time he was in a new place. A daycare asked her to unenroll him because he would spend all day rocking and crying, staring at the door. Mr. Meier was never assessed for, or diagnosed with, an autism spectrum or other disorder, and he started speaking again at around the age of 4. But his struggles didn't disappear.

        The neighborhood kids teased him. The kids on the bus teased him. He couldn't read people or social situations. Jokes escaped him. His younger sister had to explain what things

---

[1] The parties disagree as to the appropriate guideline calculation in this case. If the Court ultimately declines to apply the § 2G2.1 cross-reference to any of the counts of conviction, Mr. Meier's requested sentence would fall within the advisory range of 210-262 months. Should the Court apply the § 2G2.1 cross-reference to some, or all, of the counts, his requested sentence would represent a variance.

[2] The information in this section is generated largely from social history interviews with Mr. Meier's family that were conducted by Office of the Federal Public Defender clinical social worker, Sarah Champ, LCSW.

meant to him. His mother had him join the school basketball team, but no one would pass him the ball. Other kids wouldn't talk to him at the church youth group that his parents made him attend, anyone who did became a target of ridicule themselves.

The bullying at the Christian school where his parents had enrolled him in the fourth grade was relentless and deeply cruel, culminating in the sexual assault described in the Presentence Report, when he was in the seventh grade.[3] Bespectacled, with bad acne, Mr. Meier was utterly miserable. His sister recalls that he started wearing a big orange coat, wanting both to make himself look bigger and to have a place to hide, but it only made him stand out more. One year, the only kid, other than his sister, who came to his birthday party, was also one of his tormentors.



His parents, deeply religious (as is Mr. Meier), finally took him out of the school. His mother homeschooled him, using a Bible-based curriculum, for a year.

---

[3] PSR ¶ 159.

High school, where he was able to more easily disappear into the crowd, was a relief. Mr. Meier grew to be 6'3, and the other kids largely stopped singling him out. He filled his days with video games, alone in his room. Around this time, a few of the neighborhood boys who used to mock him, introduced him to an (adult) porn movie. One of the boys was old enough to get these types of tapes and soon, they were watching them all the time, all of the boys sitting around and masturbating together. His mother had an idea of what they might be doing and worried about whether she should forbid it. But it was the first time in his life that Mr. Meier had ever spent time with other kids, or that he seemed to have friends. So, she let it go.

Mr. Meier graduated from high school and reluctantly went to college—totally unsure of where he belonged or what he should do with himself. It took him six years to finally finish. He lived at home with his parents, unable to deal with the idea of living on his own and of more change, until he was 29. He bought his house, but didn't move in for a year after purchasing it. He wouldn't (or couldn't) leave until he had fixed it up so that it looked identical to his parents' home—the same kitchen setup, the same carpet, the same shower curtain in the bathroom. His family has never met a girlfriend. He's never had an adult relationship. His sister has met one friend of his, but they stopped coming around years ago. Chris Meier has lived his life largely alone.

To be sure, what he did online was awful, egregious, and extensive. The profundity of his loneliness doesn't excuse what he did to finally feel valued, albeit by a group of individuals who share his disordered attractions and addiction. Mr. Meier feels like the assault froze something inside of him. He feels like he is stuck at the age of 14, the only time when he briefly had "friends" in real life. He knows what he does is wrong, and he detests it. He has spent hours praying for

God to help him overcome his struggle with this sickness, his addiction, desperately wanting to change. He has gone to church counseling. He became the accountability partner of his pastor. He admitted his struggles freely to the police. And he wanted no part of contesting his guilt in this case—pleading guilty to everything, without a single concession from the government, knowing that he would spend decades in jail, but not wanting to put anyone—the victims, the government, his family—through a trial. Mr. Meier hates the harm he knows he has caused. He tried in good faith to do treatment in his state case. He wants to do all the treatment he can, both in and out of the Bureau of Prisons. He does not want to live like this.

Cases like this one are hard. But Chris Meier has value, and not just in some dark corner of the internet. His life has meaning. He is redeemable. For him, twenty years in prison, followed by ten years of supervised release, would be a sufficient, but not greater than necessary, sentence. It would account for the scope of the indictment and punish him, substantially but appropriately, for the harm his actions caused. It would protect the community, keeping Mr. Meier in custody until he is 60 years old and then under the Court's close supervision for a decade beyond that. It would not create unwarranted sentencing disparities as between individuals who have been convicted of analogous offenses. And it would give Mr. Meier a reason to hope for a bit of a life outside of prison walls, a reason to keep doing the hard work of unpacking how he became this way and figuring out how to finally overcome it.

## Argument

### I. This Court should vary downward because the applicable guideline provisions are flawed and not empirically based.

This Court can – and should – consider when a guideline isn't based on empirical data or when it fails to properly capture distinctions in culpability. This is particularly true when a

guideline reflects "unsound judgment", and thus does not adequately capture the statutory sentencing considerations of 18 U.S.C. § 3553(a). *United States v. Rita,* 551 U.S. 338, 357 (2007); *see also Kimbrough v. United States,* 552 U.S. 85, 101-102 (2007). A review of the Sentencing Commission's reports to Congress over the past few decades as well as Congressional intent in implementing child pornography guidelines demonstrates that the guidelines for these offenses reflect precisely that type of "unsound judgment."[4] Congress has repeatedly raised the penalties for this category of offenses despite recommendations by the Sentencing Commission to the contrary.[5]

In February 2013, the Sentencing Commission released a report to Congress on the child pornography guidelines for non-production offenders. *Id.* The Commission explained that it compiled the report in large part due to the increasing rate of below guideline sentences for offenders sentenced under USSG § 2G2.2, and pursuant to its statutory duty to "consider whether the guidelines are in need of revision in light of feedback from judges as reflected in their sentencing decisions." *Id.* at 6. The report found that "as a result of recent changes in the computer and Internet technologies that typical nonproduction offenders use, the existing

---

[4] *See, e.g.,* Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines* (Jan. 2009) (available online at https://www.ussc.gov/sites/default/files/pdf/training/annual-national-training-seminar/2016/report_stabenow.pdf).

[5] *2012 Report to Congress: Federal Child Pornography Offenses*, United States Sentencing Commission, December 2012 (hereafter "2012 Child Pornography Report") (available online at https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf).

sentencing scheme in non-production cases no longer adequately distinguishes among offenders based on their degrees of culpability." *Id.* at ii.

An update to that report, released by the Sentencing Commission in October 2021, emphasized that in the eight years since the release of the 2012 Report, nothing had changed:

> "[t]he [child pornography] guideline is both overinclusive and underinclusive. Thus, it no longer effectively differentiates among offenders in terms of the seriousness of the offense or culpability of the offender."[6]

And even in a case such as this one, where Probation found that the cross-reference to U.S.S.G. § 2G2.1 was appropriate at least as to some of the counts, the problems with the over-inflation of the guideline ranges persists. For example, under the § 2G2.2 guidelines, Mr. Meier receives enhancements for using a computer (two levels), and for an offense involving more than 600 images (five levels), despite these enhancements applying in essentially every single case. Likewise, under the § 2G2.1 guideline, Probation assessed enhancements for the involvement of a child who had attained the age of 12 but who had not yet attained the age of 16 (two levels), and for the use of a computer (two additional levels)—enhancements that, on their face, apply in the overwhelming majority of these types of cases.

Mr. Meier is going to get a lengthy punishment regardless of whether the Court adopts Probation's guideline calculation in part or in full. *See generally* Response/Objections to Presentence Report, ECF No. 31 at pgs. 1-7 (setting out a number of alternatives to the 360-480 guideline range calculated in the PSR: 1) 210-262 months under § 2G2.2; or 2) 292-365 months if

---

[6] *Federal Sentencing of Child Pornography: Non-Production Sentences,* UNITED STATES SENTENCING COMMISSION, June 2021, at 69 (hereafter "2021 Child Pornography Report") (available online at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf).

one count were subject to the § 2G2.1 cross-reference; or 3) 324-405 months were the § 2G2.1 cross-reference applied to two counts). Here, the Court should consider imposing a sentence that would fall within the advisory guideline range should some, or all, of these almost universally applied enhancements be disregarded.

**A. Several § 2G2.2 enhancements are illogical, as they have become inherent to the vast majority of federal child pornography offenses.**

At least two of the enhancements that increase Mr. Meier's sentencing guideline range under § 2G2.2 purport to indicate aggravating factors but have become inherent to the crimes being punished themselves. Those enhancements include the use of a computer (applied in 96.3% of sentences nationwide in 2019), and possessing more than 600 images (applied in 77.2 % of sentences nationwide in 2019).[7] Put another way, the Guidelines' promulgated enhancements may have been intended to target more culpable offenders, but in practice, these "enhancements" merely increase the average sentence across all defendants – rendering them essentially meaningless as a method of measuring culpability.

### *Use of a Computer (§ 2G2.2(b)(6))*

Congress directed the Sentencing Commission to amend § 2G2.2 in 1996, adding a 2-level increase for using a computer to carry out a child pornography offense, to address the increasing prevalence of computer usage.[8] By their 2021 Report, the Commission's data showed this increase applies in more than 95% of cases.[9] The Commission voiced concern that these numbers meant

---

[7] *Id.* at 19.

[8] U.S.S.G. Sentencing Guideline Amendment 537.

[9] 2021 Child Pornography Report at 4.

that the increase is no longer tied to increased culpability, but now has become over-inclusive and meaningless—effectively increasing the base offense level in nearly every case.

As the Commission itself has opined, this is one of several enhancements in § 2G2.2 that has not kept pace with technological advancements.[10] Congress has failed to amend the Guideline to address these concerns – despite repeated requests by the Commission to do so – likely due to the political unpopularity of any appearance of leniency for sex offenders; this Court, unbound by such political concerns, should disregard this enhancement altogether.

### 600+ images enhancement (§ 2G2.2(b)(7))

Mr. Meier receives a 5-level enhancement for having more than 600 images – an arbitrary number with no basis in research or logic. Indeed, because the "series" in which images are often disseminated on the internet come in dozens or hundreds of images or videos per series, the "typical" child porn case now involves well over 600 images. Because possession of many images is incredibly common in child pornography cases, it should not aggravate the sentence given to any particular defendant.

The Sentencing Commission has acknowledged that "technological changes have resulted in exponential increases in the volume and ready accessibility of child pornography," and that, as a result, the current enhancement for the number of images "does not adequately distinguish among offenders regarding their culpability for their collecting behaviors".[11] Because this purported enhancement is now inherent to most child pornography crimes, it should not be used to enhance Mr. Meier's sentence here.

---

[10] *Id.* at 68.

[11] 2012 Pornography Offenses Report at 322-23.

**B. Nor, under § 2G2.1, does it make sense to enhance sentences for nearly universally applicable conduct.**

The generally harsher production guideline, §2G2.1, suffers from many of these same problems. The Commission also published an extensive study in 2021 of child pornography production offenders, which Mr. Meier has attached in full as *Exhibit A* for the Court's reference. *See Exhibit A,* UNITED STATES SENTENCING COMMISSION, *Federal Sentencing of Child Pornography: Production Offenses*, October 2021. And, as with § 2G2.2, if nearly half of the cases sentenced under §2G2.1 are enhanced because they involved a computer, it becomes a meaningless measuring stick for enhancing any one individual's sentence or culpability. *See Exhibit A* at p.20. The same is true of the enhancements for the offense involving individuals who have not yet turned 16 years old—something that applies in over 90% of cases under this guideline. *Id*. If the presence of a minor in a child pornography case is assured, it cannot, by definition, also be an aggravating factor. These enhancements do not result in more harsh punishment for more dangerous offenders; they simply result in an increase in the base offense level for all offenders.

**C. Mr. Meier should be sentenced without consideration of these enhancements.**

This Court should exercise its discretion and decline to impose sentence based on guideline enhancements that are not based on empirical evidence or that apply nearly universally. Without the enhancements for use of a computer, the involvement of a minor who had not attained the age of 16, or the number of images, Mr. Meier's total offense level would be four to seven levels lower.

Thus, even starting from the PSR's final offense level of 41 (using the § 2G2.1 cross-reference for four counts),[12] this would mean that the Court should consider varying down to the

---

[12] PSR at ¶ 146.

ranges suggested for an offense level of 34 (168-210 months; 7 levels lower,) or to the ranges suggested for an offense level of 37 (235-293 months; 4 levels lower). Mr. Meier's requested sentence of 240 months falls well within these adjusted ranges.

> II. **A sentence of 240 months is appropriate for Mr. Meier and his conduct, and comports with the sentences imposed in analogous cases nationwide.**

The parsimony principal of § 3553 requires the Court to impose a sentence that is "sufficient, but not greater than necessary." Here, that is a sentence of 240 months in prison, followed by 10 years of supervised release.

There are, to be sure, aggravating aspects of this case. Among them is Mr. Meier's prior conviction. As he candidly told the agents, he has been dealing with this unhealthy and all-consuming addiction throughout his life. He knows that isolation is a trigger. When he lived with his parents while on parole in Wyoming, he was able to keep himself distracted enough to do reasonably well. He would stay at work as late as he could, he would stay up talking to his parents, he would walk endless laps around the park, all so that he wouldn't be alone and inside. But when he returned to Colorado, and the pandemic shut down everything, and he would come home from work to find his sister's ex-husband asleep in the recliner in the living room, Mr. Meier retreated to his room. Relapse followed.

Jail is, in some ways, a relief. No computers. No images. No daily struggle with his intense self-loathing. Mr. Meier knows that he needs treatment. And he wants help. He has not shied away from looking at himself, his triggers, the damage he has caused. It spills out of him, in rapid and lengthy torrents, when talking about what he has done. He has insight, including into just how much further he has to go.

Twenty years is a long time. It is the length of an entire military or police career. It is longer than the maximum possible sentence for sexually abusing a minor under 18 U.S.C. § 2243, or for carjacking a person with the intent to cause their death or other serious bodily harm under 18 U.S.C. § 2119(1), or for committing voluntary manslaughter under 18 U.S.C. § 1112. It is longer than Chief Justice John Roberts has been on the Supreme Court. Mr. Meier knows he deserves a substantial sentence, and he is asking for one. Given the context of the sentences often imposed in like cases, his request is also a relatively modest and reasonable one.

One of the statutory factors that the Court must consider is whether the sentence it imposes here will create disparity between others who are similarly situated. A 240-month sentence would not do so. For example, in Fiscal Year 2023, the average sentence imposed in a child pornography trafficking case, as this one is, when a person had a prior sexual abuse or child pornography conviction subjecting them to a 15-year mandatory minimum penalty (as Mr. Meier does) was **236 months**. *See Exhibit B*, UNITED STATES SENTENCING COMMISSION, *Quick Facts, Child Pornography Offenses FY23*. And the average sentence for a production offender, sentenced under § 2G2.1 in fiscal year 2019, the vast majority of whom were subject to a 15-year mandatory minimum, was **275 months**. *See Exhibit* A at p.9; *see also Exhibit C*, UNITED STATES SENTENCING COMMISSION, *Quick Facts, Sexual Abuse Offenses FY23,* noting that in 2023, the average sentence for an individual convicted (as Mr. Meier was not) of child pornography production, and who also had an applicable mandatory statutory minimum penalty, was **304 months**. Interestingly, the average federal sentence imposed for the hands-on offense of non-statutory rape was only **212 months**. *Id.*

Variances are also extremely common in these types of cases—57% of § 2G2.2 defendants received a downward variance in 2023 (*see Exhibit B*), and 45% of individuals convicted of a sexual abuse offense (including production defendants sentenced under § 2G2.1) received a downward variance in 2023 (*see Exhibit C*).

Nor does the "dark web" angle to this case suggest that a higher sentence would be appropriate or warranted. Indeed, Jonathan Johnson, who not only operated a 27,000 member Tor site but who also produced child pornography, was sentenced to 21 years in prison in 2015 for these activities. *See Exhibit D*, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, "*'Operation Roundtable' ringleader sentenced to 21 years after ICE investigation*", February 12, 2015. Similarly, Eric Marques, who was described as being "one of the largest facilitators of child pornography in the world", because he hosted several hundred Tor sites, with millions of CSAM images on them, received 27 years in prison for his crimes. *See Exhibit E*, U.S. Attorney's Office, District of Maryland, "*Dark Web Child Pornography Facilitator Sentenced to 27 Years in Federal Prison for Conspiracy to Advertise Child Pornography*", September 15, 2021.

And if dark web administrators, the people actually running these websites, have received sentences that are only marginally longer than the one Mr. Meier now seeks, the users and content-generators and distributors on those sites have, over the last several years, typically received even less prison time than Mr. Meier is requesting from the Court. Kory Schulein, for example, received 151 months from a judge in Illinois after posting 13,733 messages—many of them with links to CSAM materials—on exactly these sorts of Tor sites. *See Exhibit F*. Eric Johansson received 150 months from a judge in North Carolina for extensively posting and distributing CSAM on a dark web chat room. *See Exhibit G*. Another "herculean" distributor of CSAM on the dark web

received 12 years for his activities. *See Exhibit H*. Those men, as described by the United States Department of Justice, did exactly what Mr. Meier has been convicted of doing, and received far less time than he is requesting.

And even if the Court looks more at cases where there is "dark web" production, Mr. Meier's requested sentence would not be disparate. For example, a Texas man who both administered a Tor CSAM site and *directed* the hands-on abuse of a 3-year-old by a foreign national via webcam, received 15 years in prison for his crimes. *See Exhibit I*. And a man who not only "engaged in sexually explicit communications with persons believed to be minors and encouraged those apparent minors to create sexually explicit images of themselves", but who also then *sold* those images on the dark web, recently received just under 22 years from an Oklahoma judge. *See Exhibit J*. These comparisons are, admittedly, somewhat imperfect because every case is individuated by its facts and the circumstances of the defendant. But, taken collectively, these case comparisons speak to the larger point: while a substantial sentence is both needed and warranted here, that sentence need not exceed twenty years.[13]

While Mr. Meier's online activities were admittedly extensive, he did not, and has never, committed any type of "contact" or hands-on offense. His crimes involved neither force nor incapacitation. He was not in a position of trust with respect any of the minor victims—he was not their parent or other family member, nor was he a teacher or a coach. Nothing he did involved infants or toddlers or children under the age of 12. No sadomasochism enhancements apply. That is not to say that what Mr. Meier did was not heinous—of course it was and is. But if the average

---

[13] Even in what has been perhaps the most-publicized sexual abuse case in the last decade, Ghislaine Maxwell received a 240-month sentence, after trial, for her extensive misconduct which spanned over a decade and involved dozens and dozens of victims. *See Exhibit K*.

parent who assaults their own child on camera receives a sentence of 340 months, and the average hands-on offender receives a sentence of 307 months, and the average person who incapacitated their victims in some way receives 313 months, Mr. Meier's punishment should be calibrated accordingly.  *See Exhibit A* at p.7.

Finally, while twenty years in prison is an enormous punishment for anyone, it is particularly so for those convicted of child pornography offenses.  As a man who has struggled to negotiate social situations throughout his life, Mr. Meier will enter prison as a pariah even in that limited social setting; he will be incredibly vulnerable to violence, manipulation, and domination by others.  Twenty years of imprisonment will be a harsh and life-altering punishment for this man.  Under all of the circumstances presented here, it is enough.

### III.    Designation Request

Mr. Meier respectfully requests that the Court recommend that he be designated to serve his sentence of imprisonment at Englewood FCI in Englewood, Colorado, a Bureau of Prisons ("BOP") facility that is somewhat less likely to be populated by violent offenders and gang members who may target him for his offenses of conviction.

Understanding that the BOP has ultimate discretion over both his designation and his security-level classification,[14] Mr. Meier urges this Court to consider this recommendation for two distinct reasons.  First, Englewood FCI has a Non-Residential Sex Offender Treatment Program, in which "[p]articipants learn basic skills and concepts to help them understand their past offenses

---

[14] Counsel believes, based on the BOP's Inmate Security and Classification Guide that Mr. Meier is likely to be eligible for placement in a low-security facility.

and to reduce risk of future offending."[15]  In this program, Mr. Meier can receive the treatment that he both wants and needs while in a setting with similarly-situated offenders, making targeted violence less likely.  Second, Englewood FCI is the closest BOP facility both to Mr. Meier's parents (based in Wyoming) and his sister (based in Denver).  Proximity to his family will provide him with much-needed support during what is certain to be an incredibly difficult transition to a very long period of incarceration.

## Conclusion

Christopher Meier knows that he engaged in reprehensible conduct.  He fully acknowledges that a lengthy period of imprisonment is both necessary and appropriate for his crimes.  But, because a sentence in excess of twenty years would be greater than what is necessary to fully and fairly punish his conduct, Mr. Meier respectfully requests that this Court impose a sentence of 240 months of imprisonment, with ten years of supervised release to follow.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender

s/ *Stephanie Snyder*
STEPHANIE SNYDER
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone: (303) 294-7002
FAX: (303) 294-1192
Stephanie_Snyder@fd.org
Attorney for Christopher Meier

---

[15] *See* https://www.bop.gov/inmates/custody_and_care/sex_offenders.jsp.

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2024, I electronically filed the foregoing *Motion for Variant Sentence of 240 Months* with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Alecia Riewerts, Assistant United States Attorney
Email:  Alecia.Riewerts@usdoj.gov

Kyle P. Reynolds, Trial Attorney
Email:  Kyle.Reynolds@usdoj.gov

I hereby certify that I have mailed or served the document or paper to the following non-CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Christopher Meier (via hand-delivery)


                                             s/ *Stephanie Snyder*
                                             STEPHANIE SNYDER
                                             Assistant Federal Public Defender
                                             633 17th Street, Suite 1000
                                             Denver, CO  80202
                                             Telephone: (303) 294-7002
                                             FAX: (303) 294-1192
                                             Stephanie_Snyder@fd.org
                                             Attorney for Christopher Meier