

DEFENDANT'S
EXHIBIT
A
USA v. Meier
23-cr-00419-RMR



**United States Sentencing Commission**
October 2021

# FEDERAL SENTENCING OF
# CHILD PORNOGRAPHY
## PRODUCTION OFFENSES





# Federal Sentencing of Child Pornography: Production Offenses

CHARLES R. BREYER

Acting Chair

PATRICIA K. CUSHWA

*Ex Officio*

JONATHAN J. WROBLEWSKI

*Ex Officio*

KENNETH P. COHEN

Staff Director

OCTOBER 2021

*United States Sentencing Commission*



*Federal Sentencing of Child Pornography: Production Offenses*

# **Table of Contents**



**1**    **Introduction & Key Findings**

**12**    **Chapter One: Sentencing Framework**

**16**    **Chapter Two: Data Overview**

**26**    **Chapter Three: Proximity, Participation, and Propensity**

**44**    **Chapter Four: Sentencing Outcomes**

**54**    **Conclusion**

**58**    **Appendix**

**60**    **Endnotes**

*United States Sentencing Commission*



This report focuses on offenders sentenced under the production of child pornography guideline. A companion report, *Federal Sentencing of Child Pornography: Non-Production Offenses* (June 2021), analyzes offenders sentenced under the non-production of child pornography guideline.

# Introduction

**This publication updates and expands upon the United States Sentencing Commission's 2012 *Report to the Congress: Federal Child Pornography Offenses* (the "2012 *Child Pornography Report*") and builds upon the Commission's recent report on non-production child pornography offenses.**

This publication is the second report of a two-part series that updates and expands upon the United States Sentencing Commission's 2012 *Report to the Congress: Federal Child Pornography Offenses* (the "2012 *Child Pornography Report*").[1] In the 2012 *Child Pornography Report*, the Commission analyzed offenders sentenced under the federal child pornography sentencing guidelines and their corresponding statutes to assess how these offenders were prosecuted, sentenced, and supervised following their reentry into the community. This report focuses on offenders sentenced for child pornography production offenses under §2G2.1 of the *Guidelines Manual* (Sexually Exploiting a Minor by Production of Sexually Explicit Visual or Printed Material; Custodian Permitting Minor to Engage in Sexually Explicit Conduct; Advertisement for Minors to Engage in Production).[2]

The issues the Commission discussed in the 2012 *Child Pornography Report* persist today: the continued growth in the number of child pornography production cases, the volume and accessibility of child pornography images due to advancements in technology, and the resulting lengthy sentences for child pornography production offenders. Notably, in 2020 alone, the Cyber Tipline of the National Center for Missing and Exploited Children received 21.7 million reports of child sexual abuse imagery, online child exploitation and enticement, child sexual molestation, and child sex trafficking.[3]

Child pornography production offenses cause substantial and indelible harm to victims.[4] Offenders who produce child pornography use a variety of tactics to manipulate minors, and most offenses involve sexual contact with the victim. The typical production offender maintains a position of trust over the victim and has physical access to the child during the production of child pornography. However, a growing proportion of production offenders exploit victims remotely through the use of the internet and mobile devices.

This update to the 2012 *Child Pornography Report* is intended to provide stakeholders with current information on child pornography production offenses, offenders, and sentencing outcomes. This report provides the Commission's most in-depth study of child pornography production offenses to date through an analysis of three primary factors that the Commission has identified as relevant to sentencing child pornography production offenders:

(1) **Proximity**: the physical proximity and relationship between offenders and victims, methods of communication used to induce victims' participation in the offense, and whether offenders and victims lived in the same household;

(2) **Participation**: the offender's level of involvement with victims during the production offense, such as the method used to produce the child pornography, whether the offender engaged in sexual contact with victims, or whether the offender manipulated victims through incapacitation, coercion, enticement, or misrepresentation; and

(3) **Propensity**: the offender's level of engagement in child pornography or exploitive conduct in addition to the production offense, such as whether the offender distributed or collected child pornography in addition to the production offense or engaged in unrelated exploitation or physical sexual abuse of a child.

The Commission's analysis of these three factors focuses, in part, on the advancement of technology since the *2012 Child Pornography Report*. Emerging technology continues to create greater opportunity for child pornography production offenders to access and exploit minor victims. The expansion of mobile and digital technology has facilitated the production of child pornography, including victim-produced content. As computers and mobile devices offer video capabilities and live streaming functions, some offenders produce child pornography from remote locations apart from the victim. Focusing on data related to child pornography production offenders' proximity to the victim, participation in production, and propensity to engage in other abusive behaviors, this report provides insight into how offenders exploit victims and technology to produce child pornography and the factors courts consider in fashioning sentences for these offenses.



## PROTECT Act of 2003

Congress increased the mandatory minimum term of imprisonment from 10 to 15 years for production of child pornography offenses under 18 U.S.C. § 2251. As a result, the Commission increased the base offense level at §2G2.1 from 27 to 32.



## 2012 *Child Pornography Report*

The 2012 *Child Pornography Report* analyzed offenders sentenced under the federal child pornography sentencing guidelines and their corresponding statutes to assess how these offenders were prosecuted, sentenced, and supervised following their reentry into the community.



## *Federal Sentencing of Child Pornography: Non-Production Offenses*

The non-production report provides data from fiscal year 2019 regarding the content of the offender's child pornography collection and nature of the offender's collecting behavior; the offender's degree of involvement with other offenders, particularly in an internet community devoted to child pornography and child sexual exploitation; and the offender's engagement in sexually abusive or exploitative conduct in addition to the child pornography offense.



## This Report

This report focuses on offenders sentenced for child pornography production offenses under §2G2.1 of the *Guidelines Manual* (Sexually Exploiting a Minor by Production of Sexually Explicit Visual or Printed Material; Custodian Permitting Minor to Engage in Sexually Explicit Conduct; Advertisement for Minors to Engage in Production).

# Key Findings



**1** Although child pornography production cases comprise a small percentage of the overall federal caseload, the expansion of digital and mobile technology has contributed to a 422 percent increase in the number of production offenders sentenced over a 15-year period, from 98 offenders in fiscal year 2005 to 512 offenders in fiscal year 2019.



**2** Child pornography production offenders generally received lengthy sentences.  In fiscal year 2019, production offenders received an average sentence of almost 23 years (275 months), ranging from one year to life imprisonment.  Furthermore, over three-quarters (78.0%) were convicted under a statute carrying at least a 15-year mandatory minimum penalty.  A majority of child pornography production offenders, however, received a variance below the applicable guideline range (57.2% of the 512 cases).



**3** A majority (56.6%) of child pornography production cases sentenced in fiscal year 2019 involved a single victim.  However, a substantial minority of cases (41.0%) involved more than one minor victim, ranging from two to 440 victims.



**4** The typical production offender maintains a position of trust over the victim and has physical access to the child during the production of child pornography.  Of the 512 child pornography production offenders sentenced in fiscal year 2019, 60.3 percent were related to or otherwise maintained a position of trust over the minor victim, whether through familial relationships or by virtue of the offender's role as a teacher or a coach, for example.



**5** Due to technological advancements and the changing nature of production offenses, an increasing proportion of production offenders exploited victims remotely through use of the internet or mobile devices.  For example, over one-third (35.4%) of production offenders sentenced in fiscal year 2019 were internet strangers who met their victims through an online platform, more than double the proportion of offenders sentenced in fiscal year 2010 who met their victims online (14.3%).[5]



**6** Child pornography production offenders who were in closer proximity to their victims—those who communicated with them in person—victimized younger children compared to production offenders who communicated remotely.

- *Among offenders who communicated with their victims in person, the youngest victim in the vast majority of cases was age 12 or younger (83.5%), which included infants or toddlers in nearly one-third of the cases (30.3%).*

- *Conversely, the youngest victim for nearly two-thirds (61.7%) of remote child pornography production offenders' victims were teenagers, who were more likely to have access to the internet, cell phones, or social media.*

6      *United States Sentencing Commission*



**7** The vast majority of fiscal year 2019 child pornography production offenders (80.9%) were sentenced for an offense that involved sexual contact of a minor.



**8** Of the 512 child pornography production offenders sentenced in fiscal year 2019, 40 percent incapacitated, coerced, or enticed a victim, or misrepresented their identity to a victim to facilitate the offense.



**9** **Although the average sentence imposed was lengthy for child pornography production** offenders (275 months), courts imposed longer sentences (averaging over 300 months) on offenders who:

- *victimized infants or toddlers (average sentences of 364 months and 330 months, respectively);*

- *were parents of victims (340 months, on average);*

- *engaged in or facilitated the sexual contact of a minor during the offense (307 months, on average); or*

- *incapacitated victims (313 months, on average).*

8    *United States Sentencing Commission*

# Methodology

Figure 1.
District Court Documents Received by the Commission



**Charging Document**

**Statement of Reasons**

**Plea Agreement**

**Judgment and Commitment Order**

**Presentence Investigation Report**

To fulfill its statutory responsibilities, the Commission collects and analyzes data on federal sentences for every federal felony and Class A misdemeanor offense sentenced each year.[6] Sentencing courts are statutorily required to submit five sentencing documents to the Commission within 30 days of entry of judgment in a criminal case: (1) the charging document, (2) the plea agreement, (3) the Presentence Report, (4) the Judgment and Commitment order, and (5) the Statement of Reasons form. The Commission extracts and codes data from these documents for input into various databases. For each case in its Offender Datafile, the Commission routinely collects sentencing data, offender demographics, statutory information, the complete range of court guideline application decisions, and departure and variance information. This report uses data from the Commission's fiscal years 2005–2019 Offender Datafiles to provide information on child pornography production offenses.

Figure 2.
Federal Offenders Sentenced in Fiscal Year 2019

**FEDERAL OFFENDERS SENTENCED IN FY 2019**
**70,537**



CHILD PORNOGRAPHY PRODUCTION OFFENDERS
512



The Commission also undertook an extensive special coding project to collect and analyze data on child pornography production offenses and offender characteristics beyond the information regularly collected in the Offender Datafiles and reported in the Commission's annual *Sourcebook of Federal Sentencing Statistics*.  For this special coding project, the Commission analyzed cases in which offenders were sentenced under §2G2.1 in fiscal year 2019 under a *Guidelines Manual* effective November 1, 2004 or later, which totaled 512 cases for which there was sufficient sentencing documentation submitted to the Commission.  The resulting data provides a more complete picture of the offense conduct and offender characteristics.

The special coding project examined (1) the physical *proximity* and relationship between offenders and victims; (2) the offender's *participation* or involvement with minor victims during the production offense; and (3) the offender's *propensity* to engage in child pornography activity or child sexual abuse outside of the instant production offense.  These topics and additional information regarding the methodology are discussed in this report.

# Sentencing Framework

## Chapter

# 1

# Statutory Scheme

| Production of Child Pornography under 18 U.S.C. § 2251 | | |
|---|---|---|
| No prior sex offense conviction | Prior sex offense conviction | Two or more prior sex offense convictions |
| 15 to 30 years | 25 to 50 years | 35 years to life |

Congress has long expressed its concern for child pornography offenses, most recently in the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today ("PROTECT") Act of 2003, which established the existing statutory penalties for child pornography offenses.[7]  This chapter summarizes the statutory and guideline sentencing scheme for child pornography production offenses.

Federal statutes prohibit a variety of acts related to the production, advertisement, distribution, transportation, importation, receipt, solicitation, and possession of child pornography in chapter 110 of title 18 of the United States Code.[8]  Child pornography production offenses carry a mandatory minimum term of 15 years of imprisonment and a maximum term of 30 years.[9]  If a child pornography production offender has a prior federal or state conviction for one qualifying sex offense, the penalty range increases to a mandatory minimum term of 25 years of imprisonment and a maximum term of 50 years.[10]  Offenders convicted of production of child pornography with more than one prior federal or state conviction for a qualifying sex offense are subject to a statutory imprisonment range of 35 years to life.[11]

The PROTECT Act also created a mandatory minimum term of supervised release of five years and increased the maximum statutory term of supervised release from three years to a lifetime term of supervised release for all child pornography offenders.[12]

# Sentencing Guidelines



Chapter Two, Part G, Subpart 2
of the *Guidelines Manual*
(Sexual Exploitation of a Minor)

## *Specific Offense Characteristics*

The sentencing guidelines for child pornography production offenses are found in Chapter Two, Part G, Subpart 2 (Sexual Exploitation of a Minor) of the *Guidelines Manual*. Section 2G2.1 provides a base offense level of 32 and contains six enhancements based on aggravating circumstances related to: (1) the age of the victim(s) involved;[13] (2) whether the offense involved the commission of a sexual act or sexual contact;[14] (3) whether the defendant knowingly engaged in distribution of child pornography;[15] (4) whether the offense involved material that portrayed sadistic or masochistic conduct, depictions of violence, or an infant or toddler;[16] (5) whether the defendant was a parent, relative, or legal guardian of the minor involved in the offense, or the minor was otherwise in the custody, care, or supervisory control of the defendant;[17] and (6) whether the offense involved the knowing misrepresentation of a participant's identity or use of a computer to persuade or entice a minor to participate in sexually explicit conduct.[18]

Section 2G2.1 also provides that "[i]f the offense involved the exploitation of more than one minor," the court should apply the guidelines' multiple count rules in §§3D1.1 through 3D1.5 "as if the exploitation of each minor had been contained in a separate count of conviction," even if the indictment only contained a single production count.[19]  Thus, in a production case involving multiple victims, an offender's offense level could be increased to account for harm to additional victims, even if the offender is convicted only of a single count of production.[20]

### §2G2.1(b)(1)
*Victim under age of 12 or under age of 16*

**2- or 4-level increase**

### §2G2.1(b)(2)
*Commission of a sex act or sexual contact*

**2- or 4-level increase**

### §2G2.1(b)(3)
*Distribution of child pornography*

**2-level increase**

### §2G2.1(b)(4)
*Sadistic or masochistic conduct or an infant or toddler*

**4-level increase**

### §2G2.1(b)(5)
*Parent, Relative, Guardian, or Custody of a Minor*

**2-level increase**

### §2G2.1(b)(6)
*Misrepresentation or Use of a Computer*

**2-level increase**

14    *United States Sentencing Commission*

While most child pornography production offenders are referenced to §2G2.1 because of their statute of conviction, some are sentenced under §2G2.1 as a result of a cross reference from another guideline.  For example, under §2G2.2, the non-production child pornography guideline, a defendant who produced (or attempted to produce) child pornography but who was convicted solely of a non-production offense (such as possession, receipt, or distribution) should be sentenced under §2G2.1 rather than under §2G2.2 if the former guideline yields a higher sentencing range than the latter guideline.[21]  In some cases, the statutory maximum punishment may be lower than the otherwise applicable guideline range, and thus, the statutory maximum becomes the guideline sentence.[22]

In addition to the §2G2.1 enhancements and recidivist statutory enhancements, the guidelines also provide for enhanced penalties for certain repeat sex offenders.  The guideline at §4B1.5 (Repeat and Dangerous Sex Offender Against Minors) contains two enhancements for defendants convicted of producing child pornography who have at least one prior conviction for a specified sex offense or who "engaged in a pattern of activity involving prohibited sexual conduct."[23]  Section 4B1.5(a) applies if an offender has one or more prior convictions for a specified sex offense.  If so, the child pornography production offender's minimum offense level becomes 34 for one conviction and 37 for two or more convictions.  The offender's minimum Criminal History Category is V.[24]  If §4B1.5(a) does not apply, but the offender engaged in conduct constituting a "pattern of activity," §4B1.5(b) provides a 5-level enhancement to the offense level determined at §2G2.1.[25]

As noted above, the PROTECT Act increased the statutory maximum term of supervised release to lifetime supervision for all child pornography offenders.  The supervised release guidelines recommend a lifetime term of supervised release for all child pornography offenders.[26]

# Data

# Overview

# Chapter

# 2

# Introduction

**This chapter provides data analyses of offenders sentenced under the child pornography production guideline at §2G2.1, focusing on offender and offense characteristics.**

*The analyses in this section include data from fiscal years 2005 to 2019 for offenders sentenced under a* Guidelines Manual *effective November 1, 2004 or later and for which the Commission had complete guideline application information.  The Commission used fiscal year 2005 as the earliest point of analysis to evaluate a 15-year period after the PROTECT Act and its impact on statutory penalties and the guidelines.*

Figure 3.
Most Serious Offense of Conviction
for §2G2.1 Offenders
*Fiscal Year 2019*[27]



Figure 4.
Mandatory Minimum Sentences
for §2G2.1 Offenders
*Fiscal Year 2019*



## Fiscal Year 2019 Snapshot

Child pornography production offenders represented a small percentage of the overall federal caseload in fiscal year 2019.  Of the 70,537 federal offenders sentenced in fiscal year 2019 with complete case documentation sent to the Commission, 0.7 percent (512 offenders) were sentenced under §2G2.1 as their primary guideline.[28]  Of the 512 offenders sentenced under §2G2.1 in fiscal year 2019, 77.2 percent were convicted of a child pornography production offense.  The remaining offenders were convicted of another offense but were sentenced under §2G2.1 as the primary guideline via a cross reference because the offense involved production conduct: 12.5 percent were convicted of a non-production child pornography offense (possession, receipt, or distribution); 8.8 percent were convicted of travel or enticement of a minor offense; and 1.2 percent were convicted of an offense related to child prostitution (Figure 3).[29]

Of the 512 child pornography production offenders sentenced in fiscal year 2019, 72.3 percent were convicted of an offense carrying a 15-year mandatory minimum penalty (Figure 4).  An additional 5.7 percent faced a mandatory minimum penalty greater than 15 years because they were convicted of a child pornography

Figure 5. Trend in Number of Child Pornography Cases
*Fiscal Years 2005 – 2019*



production offense and had one or more prior convictions for a qualifying sex offense. Eighteen percent (18.0%) were convicted of a crime that carries either a five or ten-year mandatory minimum sentence.  Notably, the remaining 4.1 percent of offenders were not convicted of an offense that carries a mandatory minimum penalty (*e.g.*, possession of child pornography), but the court applied a cross-reference to §2G2.1 because the offense involved production of child pornography.

### Trends from Fiscal Years 2005 – 2019

The number of federal child pornography production offenses has increased over time.  In large part, this increase can be attributed to technological advancements that provide offenders easier access to victims as well as the prevalence of smartphones with built-in cameras and expansive storage.[30]

As depicted in Figure 5, the number of child pornography production offenders sentenced under §2G2.1 has increased steadily from 98 offenders in fiscal year 2005 to its peak in fiscal year 2019 with 512 offenders, which represents a 422 percent increase over 15 years.  Conversely, the number of non-production offenders sentenced under §2G2.2 has steadily decreased between 2012 and 2019.[31]  As a result of these opposing trends, the overall number of child pornography offenses (production and non-production offenses combined) has remained relatively static since its high in 2012.

## Offender Demographics
## §2G2.1 Offenders Compared To All Other Offenders
### *Fiscal Year 2019*

**75.2%**

### White
Most child pornography production offenders were White (75.2%). This contrasts with all other federal offenders, who were 19.9 percent White.

**95.5%**

### U.S. Citizen
Nearly all child pornography production offenders were U.S. citizens. Other federal offenders were 56.3 percent U.S. citizens.

**94.3%**

### Male
The overwhelming majority were male (94.3%). This contrasts with all other federal offenders, who were 87.8 percent male.

**38**

### Average Age
The average age was 38 years old, while the average age of all other federal offenders was 37 years old.

**48.4%**

### College Educated
Nearly half of child pornography production offenders attended college, compared with just over one-fifth of all other offenders.

## Criminal History Category

**CHC I**



**70.3%**
**44.2%**

More than 70 percent of child pornography production offenders were assigned to CHC I, the lowest category.

By contrast, fewer than half (44.2%) of all other federal offenders were assigned to CHC I.



| | II | III | IV | V | VI |
|---|---|---|---|---|---|
| | 8.6% / 14.7% | 8.6% / 16.6% | 2.5% / 9.7% | 5.5% / 5.8% | 4.5% / 9.1% |

## Offender and Offense Characteristics

Child pornography production offenders sentenced under §2G2.1 differ from the general federal offender population with respect to demographic factors and criminal history. Child pornography production offenders tend to be racially homogenous, have higher levels of education, and have limited or no prior criminal histories. Most fiscal year 2019 child pornography production offenders were White (75.2%) and nearly all were U.S. citizens (95.5%) and male (94.3%). This contrasts with all other federal offenders who were 19.9 percent White, 56.3 percent U.S. citizens, and 87.8 percent male.

The average age of child pornography production offenders sentenced in fiscal year 2019 was 38 years old, only one year older than the average age of all other federal offenders sentenced in fiscal year 2019. Child pornography production offenders generally attained a higher degree of education than all other offenders, with just under half (48.4%) of production offenders having attended college compared to approximately one-fifth (21.1%) of all other offenders.

Finally, child pornography production offenders have less extensive criminal histories compared to other federal offenders. In fiscal year 2019, 70.3 percent of child pornography production offenders were assigned to Criminal History Category I (the lowest category, requiring no more than one criminal history point). By contrast, 44.2 percent of all other federal offenders were assigned to Criminal History Category I. To add further context, a majority (60.7%) of child pornography production offenders had zero criminal history points compared to one-third (33.4%) of all other offenders sentenced in fiscal year 2019.

**Chapter Four Enhancements for Repeat and Dangerous Sex Offenders**

Despite having less extensive criminal records than other federal offenders, the application of sentencing enhancements under §4B1.5 (Repeat and Dangerous Sex Offender Against Minors) for child pornography production offenders has more than doubled since fiscal year 2010.  This increase is driven almost entirely by the application of enhanced sentences for an offender's pattern of activity under §4B1.5(b) (which does not require a prior conviction to apply).[32]  More than half (51.6%) of the child pornography production offenders sentenced in fiscal year 2019 received enhanced sentences under §4B1.5(b) for engaging in a pattern of activity involving prohibited sexual conduct, compared to less than one-quarter (22.9%) of child pornography production offenders sentenced in fiscal year 2010.[33]  In fiscal year 2019, 5.1 percent of child pornography production offenders received enhanced sentences under §4B1.5(a) for a prior sex offense conviction, which is comparable to the 4.2 percent of offenders who received this enhancement in fiscal year 2010 (Figure 6).

Figure 6. Application of §4B1.5 for §2G2.1 Offenders
*Fiscal Year 2019*



No Enhancement 43.4%

§4B1.5(b) 51.6%

§4B1.5(a) 5.1%

The application of the repeat and dangerous sex offender enhancement under §4B1.5 has more than doubled since fiscal year 2010.

# Sentencing Characteristics

### Specific Offense Characteristics Applied to §2G2.1 Offenders

Reflecting the changing nature of child pornography production offenses, the frequency with which the §2G2.1 specific offense characteristics apply today differs from the application rates a decade earlier. Two of the six enhancements under §2G2.1(b)—the age of the minor victim and commission of a sex act or sexual contact—continue to apply in the majority of child pornography production cases.[34] However, because the crime now is committed more often over the internet, fewer offenders received an enhancement for being a caregiver of the minor victim in the offense in fiscal year 2019 (47.5%) compared to fiscal year 2010 (62.0%). Far more offenders in fiscal year 2019 received the enhancement for misrepresentation of their identity or use of a computer to persuade a minor victim compared to offenders sentenced in fiscal year 2010 (45.7% and 19.5%, respectively). Additionally, one-third (33.0%) of production offenders sentenced in fiscal year 2019 received an enhancement for knowingly distributing child pornography, compared to roughly one-quarter (24.5%) of production offenders sentenced in fiscal year 2010.

### Sentence Length

In fiscal year 2019, all child pornography production offenders were sentenced to a term of imprisonment. Sentences ranged from one year to life, with an average sentence of 275 months.[35] More than three-quarters (78.0%) of fiscal year 2019 child pornography production offenders were convicted under a statute that carries at least a 15-year mandatory minimum penalty.



**Specific Offense Characteristics Applied to §2G2.1 Offenders**
*Fiscal Year 2010 and Fiscal Year 2019*

Fiscal Year 2019 | Fiscal Year 2010

| | |
|---|---|
| ID/Computer | 19.5% / 45.7% |
| Care or Control | 62.0% / 47.5% |
| Distribution | 23.4% / 27.4% |
| Sadistic or Masochistic/Infant/Toddler | 24.5% / 33.0% |
| Sex Act or Sexual Contact | 68.8% / 71.7% |
| Age | 92.5% / 90.8% |

Figure 7. Average Guideline Minimum and Average Sentence for §2G2.1 Offenders
*Fiscal Years 2005 – 2019*



## Trends in Average Guideline Minimum and Average Sentence Imposed from Fiscal Years 2005 – 2019[36]

Since the passage of the PROTECT Act, the bottom of the average §2G2.1 guideline range—that is, the average guideline minimum—for child pornography production offenses has increased.  At the same time, the average sentence imposed has remained relatively stable, which has created an increasing divide between the average guideline minimum and average sentence imposed.  Courts continue to impose lengthy sentences, but also increasingly apply downward variances in response to the higher guideline ranges that apply to the typical child pornography production offender.

The average guideline minimum for child pornography production offenders has increased steadily over time, from an average of 273 months in fiscal year 2005 to an average of 332 months in fiscal year 2019 (Figure 7).  During that same time, the average sentence has decreased slightly from an average sentence of 281 months in fiscal year 2005 to an average sentence of 275 months in fiscal year 2019.  Although the difference between the average guideline minimum and average sentence imposed has widened over time, the long-term trend shows that courts consistently sentence child pornography production offenders to lengthy sentences, ranging from an average of 258 months to 288 months over the 15-year period.

# Sentences Imposed Relative to the Guideline Range

### Fiscal Year 2019 Snapshot

Despite the lengthy average sentence (275 months), most child pornography production offenders sentenced under §2G2.1 were sentenced below the guideline range in fiscal year 2019.  Less than one-third (30.7%) of child pornography production offenders sentenced under §2G2.1 received a sentence within the guideline range in fiscal year 2019 (Figure 8).

The majority of child pornography production offenders sentenced under §2G2.1 (57.2%) received a variance below the guideline range under 18 U.S.C. § 3553(a).[37]  More than one-third (36.1%) of offenders received a non-government sponsored variance below the guideline range, compared to roughly one-fifth (21.1%) that were government-sponsored.  Relatively few child pornography production offenders (1.2%) received a variance above the guideline range.

Of the 512 child pornography production offenders sentenced in fiscal year 2019, 10.6 percent received a departure below the guideline range that was either a government-sponsored departure (5.9%),[38] substantial assistance departure (3.1%),[39] or court-sponsored downward departure (1.6%).  Few offenders (0.4%) received a departure above the applicable guideline range.

### Trends from Fiscal Years 2005 – 2019

The percentage of child pornography production offenders sentenced below the guideline range has changed over time (Figure 9, next page).  The rate of within-range sentences for offenders sentenced under §2G2.1 has decreased steadily since fiscal year 2005, from 83.3 percent to 30.7 percent in fiscal year 2019.  This change is driven largely by an increase in the rate of downward variances during that time, from 16.7 percent in fiscal year 2005 to a peak of 57.2 percent in fiscal year 2019.  The rate of substantial assistance departures, other downward departures, and upward departures or variances has remained relatively steady over time.

Figure 8. Sentence Imposed Relative to the Guideline Range for §2G2.1 Offenders
*Fiscal Year 2019*



*Federal Sentencing of Child Pornography: Production Offenses*        23

Figure 9. Sentence Imposed Relative to the Guideline Range for §2G2.1 Offenders
*Fiscal Years 2005 – 2019*



# Proximity, Propensity, and Participation

## Chapter

# 3

# Introduction

This chapter examines child pornography production offender behavior and offense characteristics. The Commission coded information from the 512 child pornography production cases sentenced in fiscal year 2019 to analyze victim characteristics and three factors relevant to sentencing child pornography production offenders: (1) proximity, a measure of the offender's physical location and relationship with the victim; (2) participation, a measure of the offender's interaction with the victim(s); and (3) propensity, a measure of the offender's tendency to engage in child pornography conduct or exploitation outside of the instant production offense. Using charging documents, plea agreements, and presentence reports, the Commission also coded information about victim characteristics that inform the discussion of these three factors.



## Proximity

Following an overview of victim characteristics, this section of the report discusses five factors related to the child pornography production offender's **proximity** to the victim: the offender's physical location and personal relationship with the victim, how the offender communicated with the victim, whether the offender traveled to meet the victim, and the association between physical proximity and age of victims.



## Participation

The second section of this chapter examines fiscal year 2019 child pornography production offenders' **participation** in the offense to gain a broader understanding of how offenders interacted with victims during the production offense.



## Propensity

The third section analyzes the child pornography production offenders' **propensity** to engage in child pornography conduct or sexual exploitation outside of the production offense to provide additional insight into the different types of production offenders.



Figure 10. Number of Victims in Child Pornography Production Offenses
*Fiscal Year 2019*

## Number of Victims

The number of child pornography production victims involved in a single offense in fiscal year 2019 ranged from one to 440.[40]  A majority (56.6%; n=290) of child pornography production cases involved a single victim.  However, a substantial minority (41.0%; n=210) had more than one minor victim (Figure 10).

Figure 11. Age of Youngest Victim in Child Pornography Production Offenses
*Fiscal Year 2019*



## Age of Victims

In fiscal year 2019 child pornography production cases, the average age of the youngest minor victim was ten years old.  In over 60 percent (61.3%) of production cases, the youngest victim was age 12 or younger, with 16.8 percent of cases involving an infant or toddler (Figure 11).[41]  In 38.7 percent of the child pornography production cases, the youngest victim was a teenager (13 to 17 years old).

## Gender of Victims

Female victims were more prevalent than male victims in child pornography production offenses (Figure 12).  In fiscal year 2019, three-quarters of the child porography production cases involved only female victims (75.6%); approximately 17 percent (17.3%) involved male victims only; and the remaining 7.1 percent of the offenses involved both male and female victims.

Figure 12. Gender of Victims in Child Pornography Production Offenses
*Fiscal Year 2019*





# Proximity

Child pornography production offenders' offense conduct and the degree of harm to the victim varies based on the offender's physical proximity and personal relationship with the victim. A majority of child pornography production offenders maintained a position of trust over their victims, whether through familial relationships or by virtue of the offender's role as a teacher or a coach, for example. However, given advancements in technology and social media use by both offenders and minors, close physical proximity is no longer necessary for offenders to produce child pornography. An increasing number of offenders exploited victims remotely through the internet or the use of mobile technology to produce child pornography. Nevertheless, offenders who appeared to have the closest proximity and communicated with their victims in person generally committed the production offense with the youngest victims. And offenders in close physical proximity to the victim(s) also had sexual contact with the victim(s) in most cases.

This section of the report discusses five factors related to the child pornography production offender's proximity to the victim: (1) the offender's physical location during the offense; (2) the offender's personal relationship with the victim (*e.g.*, parent, relative, family friend, internet stranger); (3) the means by which the offender communicated with the victim for the purposes of producing child pornography; (4) whether the offender traveled to meet a victim; and (5) the association between physical proximity and the age of the victims.

## Physical Proximity

Approximately 60 percent (n=311) of the 512 offenders in fiscal year 2019 produced child pornography in the same location as the victim, and nearly 40 percent (n=201) of the offenders committed the offense from a remote location.

Figure 13. Offender's Physical Location During the Offense
*Fiscal Year 2019*



Table 1. Relationships of §2G2.1
Offenders to Victim
*Fiscal Year 2019*

| Relationship to the Victim | N | % |
|---|---|---|
| **Total §2G2.1 Offenders** | **512** | **100.0%** |
| *Relative / Position of Trust* | *307* | *60.3%* |
| *Parent* | *93* | *18.2%* |
| *Stepparent/Legal Guardian* | *33* | *6.4%* |
| *Other Relative* | *64* | *12.5%* |
| *Parent's Intimate Partner* | *40* | *7.8%* |
| *Family Friend* | *87* | *17.0%* |
| *Teacher, Coach, etc.* | *37* | *7.2%* |
| *Internet Stranger* | *181* | *35.4%* |
| *Other Stranger* | *39* | *7.6%* |
| *Unknown* | *23* | *4.5%* |

*(All Cases)*



Figure 14. Offender Lived with Victim
*Fiscal Year 2019*

**Relationship of the Offender to the Victim**

As reflected in Table 1, a majority (60.3%) of child pornography production offenders were related to or otherwise maintained a position of trust over a minor victim, as a family member or other close relationship. Nevertheless, due to technological advancements and the changing nature of production offenses, the largest individual category of child pornography production offenders were internet strangers who met their victims through an online or remote platform (35.4%). Comparatively, only 14.3 percent of offenders in fiscal year 2010 were internet strangers who met their victims online.[42]

An offender with multiple victims may fall into more than one category (*e.g.*, an offender is the parent of one victim and the teacher of another victim). Therefore, the cumulative number in Table 1 exceeds the 512 offenders.

Biological parents (18.2%) and stepparents or legal guardians (6.4%) of a minor victim make up roughly a quarter of child pornography production offenders sentenced in fiscal year 2019. Approximately 20 percent of child pornography production offenders were either non-parental relatives (12.5%) or a minor victim's parent's intimate partner (7.8%). Just under one-quarter of the offenders were either a family friend of a victim (17.0%) or maintained another position of trust, for example, as a teacher or coach (7.2%).

Although a majority of child pornography production offenders maintained some position of trust over their victim(s), most (61.9%) did not live in the same household with their minor victim(s) (Figure 14). Nearly one-third (32.2%) of child pornography production offenders lived in the same household with a victim full-time, while 5.9 percent of offenders lived with a victim at least part-time.

**Methods of Communication with the Victim to Facilitate Offense**

Child pornography production offenders communicated with victims through various methods to induce them to participate in the offense. Furthermore, some offenders who had more than one victim used multiple methods (*e.g.*, an offender communicated with one victim in person and contacted another victim remotely, or an offender communicated with one victim in person and surreptitiously recorded a separate victim) (see Figure 15, next page). Approximately half of fiscal year 2019 child pornography production offenders

Figure 15. Methods of Communication with Minor Victims
*Fiscal Year 2019*



communicated with a victim in person (50.4%) and slightly less than half (44.0%) of the offenders communicated with a victim remotely (*e.g.*, via computer or interactive mobile device) to effectuate the offense. Notably, 19.3 percent of offenders surreptitiously recorded a victim to produce child pornography, and thus did not communicate with that victim either in person or remotely.

The type of remote methods child pornography production offenders used to communicate with victims also varied (Table 2). Slightly more than one quarter (26.6%) of child pornography production offenders used interpersonal communication methods, such as text, email, or instant messaging, to persuade a victim to participate in the child pornography production offense. Approximately one-third (32.8%) of offenders used one or more online or virtual means of communication to contact a victim, including social media platforms (24.8%), live streaming (10.0%), online video games (2.3%), and other websites (2.0%).

Table 2. Methods §2G2.1 Offenders Used to Communicate with Victims
*Fiscal Year 2019*

| Methods of Communication | | |
|---|---|---|
| | *N* | *%* |
| **Total §2G2.1 Offenders** | **512** | **100%** |
| *In Person* | *258* | *50.4%* |
| *Phone Call* | *13* | *2.5%* |
| *Text/Email/IM* | *136* | *26.6%* |
| *Social Media Platform* | *127* | *24.8%* |
| *Video Game* | *12* | *2.3%* |
| *Website* | *10* | *2.0%* |
| *Live Streaming* | *51* | *10.0%* |
| *No Contact/Surreptitious Production* | *99* | *19.3%* |

Figure 16. Travel with Intent to Engage in Sexual Contact with a Victim
*Fiscal Year 2019*



**Travel to Meet a Victim**

Of the 512 child pornography production offenders, 11.9 percent (n=61) traveled to meet a victim of the offense, most commonly after contacting the victim remotely (*e.g.*, after chatting on the internet) (Figure 16).  In a few instances, the offender initially contacted the victim in person, for example, at a family function, and then traveled to meet the victim of the offense at a later date.  Most of the 61 offenders (80.3%; n=49) who traveled to meet a victim had sexual contact with the minor.

Figure 17.  Age of Victim by Method of §2G2.1 Offender Contact (Remote or In Person)
*Fiscal Year 2019*



## Proximity of Offender and Age of the Victims

Child pornography production offenders who had closer proximity to their victims—those who communicated with them in person—victimized younger children compared to production offenders who communicated remotely (Figure 17).  Among offenders who initiated communication with their victims in person, the youngest victims for nearly one-third (30.3%) of offenders were infants or toddlers, and slightly more than half (53.2%) were prepubescent (age 4 to 12).[43]  Teenagers

were the youngest victims in 16.5 percent of the cases in which offenders initially communicated with victims in person.

Conversely, the youngest victims for nearly two-thirds (61.7%) of offenders who communicated with victims remotely were teenagers, who were more likely to have access to the internet, cell phones, or social media. The youngest victims for more than one-third of offenders who communicated with victims remotely were prepubescent (36.5%).[44]



# Participation

This section of the report examines fiscal year 2019 child pornography production offender participation in the offense to gain a broader understanding of how offenders interacted with victims during the production offense.  The Commission analyzed four measures of participation: (1) the method of production used by the offender; (2) whether the offender committed the offense with a co-participant; (3) any sexual contact with the victim during production; and (4) any incapacitation, coercion, enticement, or misrepresentation used against the victim.

Child pornography production offenders exploit technology to gain access to potential victims to produce child pornography.  Today, offenders predominantly use easily accessible technologies such as cell phones and web cameras to produce child pornography.  Some victims self-produce images or videos.  In such instances, some offenders use coercive tactics to effectuate the offense by harassing or threatening victims.  Other offenders misrepresent their identity or engage in online dialogue to entice victims.

**Method of Production**

Nearly half (47.1%) of all production offenders sentenced in fiscal year 2019 used a smartphone or tablet to create a child pornography image or video, highlighting the ease with which offenders can create new content using readily available technology (Table 3).  A substantial minority of offenders (36.5%) had victims create content at their request.  In 11.9 percent of the cases in fiscal year 2019, the offenders used a live-streaming platform or web camera to produce child pornography.  Because some offenders produced child pornography in more than one way, the percentages in Table 3 exceed 100.

Table 3. Method of Production Used by §2G2.1 Offenders
*Fiscal Year 2019*

| Method of Production | N | % |
|---|---|---|
| **Total §2G2.1 Offenders** | **512** | **100.0%** |
| *Smartphone or Tablet* | *241* | *47.1%* |
| *Victim Produced* | *187* | *36.5%* |
| *Other Camera* | *66* | *12.9%* |
| *Live Stream or Webcam* | *61* | *11.9%* |
| *Other* | *11* | *2.2%* |
| *Unknown Method or Attempted Production* | *55* | *10.7%* |



Figure 18. Co-Participants for §2G2.1 Offenders
*Fiscal Year 2019*

## Offender and Co-Participant Conduct

In fiscal year 2019, most child pornography production offenders (83.8%) committed the offense alone, but 16.2 percent of offenders committed the offense with an adult co-participant (Figure 18). Nearly as many offenders committed the offense with an adult co-participant in the same location (7.4%) as remotely (8.6%). Although there were relatively few female child pornography production offenders (5.7%; n=29), female production offenders were far more likely to commit the offense with a co-participant compared to male production offenders (75.9% of female offenders compared to only 12.6% of male production offenders).

## Sexual Contact During the Offense

The Commission found that the majority of child pornography production cases (80.9%) in fiscal year 2019 involved sexual contact. Most commonly, child pornography production offenses in fiscal year 2019 involved the offender sexually contacting a victim (51.2%; n=262) (Table 4). In an additional 4.5 percent of the cases, an adult co-participant sexually contacted the victim. A quarter of child pornography production offenses (25.2%; n=129) involved the victim(s) engaging in sexual contact alone or with another victim.

Table 4. Sexual Contact During Production Offense
*Fiscal Year 2019*

| Sexual Contact During Production | N | % |
|---|---|---|
| **Total §2G2.1 Offenders** | 512 | 100.0% |
| **Offenses Involving Sexual Contact** | 414 | 80.9% |
| *Offender sexually contacted a victim* | 262 | 51.2% |
| *Co-participant sexually contacted a victim* | 23 | 4.5% |
| *Victim(s) engaged in sexual contact* | 129 | 25.2% |
| **No sexual contact of a victim** | 98 | 19.1% |

Figure 19. Sexual Contact and Offender Present
§2G2.1 Offenders - *Fiscal Year 2019*



**Proximity and Sexual Contact**

This section of the report examines the rate and type of sexual contact when an offender committed the offense in the same location as the victim and when the offender committed the offense remotely. As discussed previously, in fiscal year 2019, of the 512 offenders, approximately 60 percent (n=311) produced child pornography in the same location as the victim, and nearly 40 percent (n=201) of the offenders committed the offense from a remote location.[45]

**Offender Present in the Same Location**

When the offender committed the offense in the same location as the victim, the offense involved sexual contact in the vast majority of cases (89.1% of the 311 cases). Most commonly, the offender sexually contacted the victim (84.2%). Less frequently, when the offender was in the same location as the victim, a co-participant sexually contacted the victim (2.3%), or a victim engaged in sexual contact alone or with another victim (2.6%). Finally, there was no sexual contact in 10.9 percent of cases when the offender committed the offense in the same location as the victim.

**Offender in Remote Location**

When the offender committed the production offense from a remote location (*e.g.*, via the internet or video chat), most cases also involved physical sexual contact, albeit less frequently than when the offender was present (68.2% of 201 cases) (Figure 19). Furthermore, the nature of the sexual contact differed. In 60.2 percent of the 201 cases where the offender committed the offense remotely, the victim engaged in sexual contact alone or with another victim. In 8.0 percent of the cases when the offender committed the offense from a remote location, a co-participant sexually contacted the victim. Finally, in nearly one-third of the 201 cases when the offender was not present, there was no sexual contact (31.8%).

Figure 20. Incapacitation, Coercion, Enticement, or Misreprentation by §2G2.1 Offenders
*Fiscal Year 2019*



## Incapacitation, Coercion, Misrepresentation, and Enticement

The Commission identified aggravating means offenders used to manipulate a victim to participate in the production of child pornography.  Forty percent of the 512 child pornography production offenders sentenced in fiscal year 2019 incapacitated, coerced, or enticed a minor victim, or misrepresented their identity to facilitate the child pornography production offense.  This section of the report analyzes the various aggravating means offenders used to induce victims to participate in producing child pornography.

## Incapacitation

Among child pornography production offenders sentenced in fiscal year 2019, roughly five percent (4.5%) used drugs or alcohol to render the minor victim unconscious, docile, or cooperative prior to the production conduct (Figure 21).

Figure 21. Incapacitation of a Minor Victim by §2G2.1 Offenders
*Fiscal Year 2019*





Figure 22. Coercion Used by §2G2.1 Offenders
*Fiscal Year 2019*

## Coercion

The Commission also examined whether the offender used any coercion—violence, threats, bullying, or other pressure—to induce the minor victim to participate in the child pornography offense.  In fiscal year 2019, one-in-five (20.1%; n=103) child pornography production offenders coerced a minor victim in some fashion to participate in the offense (Figure 22).  Of the offenders who engaged in coercive behaviors, roughly two-thirds used only one coercive approach (64.1%; n=66); more than one-third (35.9%; n=37) used more than one of these coercive tactics against a minor victim.

The most commonly used type of coercion is known as "sextortion."  It involves coercing a minor by using, or threatening to use, images or videos previously obtained to demand that the minor engage in a sexual act with the offender or to demand additional images or videos that are sexual in nature.  Sextortion can take many forms, including making threats to harm family or friends unless the victim complies with demands, hacking to gain access or control of the computer's webcam to obtain images and videos, or leading the victim to believe the perpetrator can be trusted.[46]  In fiscal year 2019, roughly eight percent (8.4%) of offenders engaged in sextortion by threatening to share or actually sharing images of the minor child with their peers, family members, friends, and even their teachers.

Approximately ten percent of child pornography production offenders either used violence (3.5%) or threatened violence (6.8%) against a minor.  Fewer offenders (1.6%) engaged in another form of bullying to coerce a minor victim.[47]  Additionally, 7.8 percent of the offenders used other forms of pressure against a minor victim, such as threatening to take away television privileges, to secure the child's cooperation with the offender's demands.

*Federal Sentencing of Child Pornography: Production Offenses* 39



Figure 23. Offender Misrepresentation of Identity
*Fiscal Year 2019*

## Misrepresentation

The increased use of the internet and remote technologies allows offenders to contact their victims on platforms where they can easily disguise their real identities. In fiscal year 2019, approximately one-fifth (19.3%) of child pornography production offenders misrepresented their identity in some manner to lure victims into participating in the production offense (Figure 23). Offenders misrepresented their age (7.2%), gender (2.2%), both their age and gender (4.9%), or another aspect of their identity (5.1%). Among production offenders who otherwise misrepresented their identity, they represented themselves as talent scouts, photographers, modeling agents, or employers. Most child pornography production offenders who misrepresented their identity initially met their victim remotely (*e.g.*, via the internet).

## Enticement

Child pornography production offenders used various forms of enticement to induce victims to participate in the offense. Of the 512 child pornography production offenders sentenced in fiscal year 2019, 15.4 percent offered minor victims enticements in the form of drugs, alcohol, gifts, or other incentives to encourage them to participate in the production of child pornography (Figure 24). Gifts or incentives (11.9%) were the most common enticements and included items such as smartphones, phone cards, and in-app purchases in an online game—items which helped facilitate both the offender's communication with the minor victim and the production of child pornography. Fewer offenders used drugs or alcohol (2.5%) or both gifts and drugs and alcohol (1.0%) as an enticement.

Figure 24. Enticement Used by §2G2.1 Offenders
*Fiscal Year 2019*



40    *United States Sentencing Commission*

# Propensity

The Commission analyzed the child pornography production offenders' propensity to engage in child pornography conduct or sexual exploitation outside of the production offense to provide additional insight into the different types of production offenders.[48] In this section of the report, the Commission examines four measures of an offender's propensity: (1) whether an offender shared self-produced child pornography, or possessed or distributed additional child pornography that the offender did not produce; (2) whether an offender was a member of an online community devoted to child pornography or sexual exploitation; (3) whether an offender had any previous contact sex offenses (any illegal sexually abusive conduct involving actual or attempted sexual contact with a victim); and (4) whether an offender had a history of non-contact sex offenses (such as soliciting a minor online).

### Propensity to Engage in Child Pornography or Exploitive Conduct

Most child pornography production offenders not only produced child pornography, but also engaged in additional child pornography conduct or sexual exploitation. Two-thirds (68.4%) of production offenders sentenced in fiscal year 2019 either distributed the pornography they produced, possessed or distributed child pornography that they did not produce, or otherwise participated in an online community devoted to child pornography or sexual exploitation. Some offenders engaged in more than one additional child pornography behavior (*e.g.*, an offender distributed child pornography and separately participated in a community devoted to sexual exploitation), therefore, the sub-categories of offenders in Figure 25 discussed below exceed 68.4 percent.

Figure 25. Engagement in Additional Child Pornography Conduct or Sexual Exploitation by §2G2.1 Offenders
*Fiscal Year 2019*



| | |
|---|---|
| No Engagement 31.6% | Engagement 68.4% |

| | |
|---|---|
| Distributed Produced Images | 31.6% |
| Distributed Non-Produced Images | 22.9% |
| Possessed Non-Produced Images | 54.7% |
| Participated in Online Child Pornography Community | 36.3% |

Slightly more than 30 percent (31.6%) of offenders distributed the videos or images they produced, most commonly using direct personal communication methods, such as instant messaging or texting.  Additionally, more than half (54.7%) of production offenders possessed child pornography that they did not produce, and almost one-quarter (22.9%) distributed child pornography that they did not produce.  More than one-third (36.3%) of child pornography production offenders were members of online child pornography communities specifically dedicated to discussing child exploitative content or abuse.

**Propensity to Engage in Child Sexual Abuse**

The Commission also examined whether the offenders committed contact or non-contact sex offenses in addition to the production offense as a measure of the child pornography offenders' propensity to sexually abuse victims.  The Commission analyzed presentence reports and plea agreements to determine whether the instant offense involved sexually abusive conduct (in addition to the production offense), whether pretrial release was revoked for a sex offense or subsequent child pornography

offense, and whether there was a criminal history of arrests or convictions for prior sexually abusive conduct or allegations of such conduct.  Additionally, the Commission reviewed the Personal History section of the presentence reports, which often described other allegations or admissions by the offender of engaging in aggravating sexual conduct.

First, the Commission analyzed the rate at which offenders committed a contact sex offense.  In nearly 40 percent (37.5%) of child pornography production cases sentenced in fiscal year 2019, the offender had engaged in a contact sex offense against a minor (Table 5).  More than one-in-ten (10.9%) had a prior conviction for a contact sex offense against a child.  Similar proportions of fiscal year 2019 child pornography production offenders were arrested for (11.5%), admitted to (10.0%), or were alleged (11.7%) to have committed a contact sex offense against a minor.[49]  Relatively few child pornography production offenders (1.0%) had a prior conviction for a contact sex offense against an adult.

Table 5. Sexual Conduct by §2G2.1 Offenders
*Fiscal Year 2019*

| Sexual Conduct | N = 512 | % of 512 |
|---|---|---|
| **Contact Sex Offenses Against a Minor** | 192 | 37.5% |
| *Conviction* | *56* | *10.9%* |
| *Arrest* | *59* | *11.5%* |
| *Admission* | *51* | *10.0%* |
| *Allegation* | *60* | *11.7%* |
| *Revocation* | *1* | *0.2%* |
| **Non-Contact Sex Offense Conviction** | 22 | 4.3% |
| **Prior Non-Production Child Pornography Conviction** | 25 | 4.9% |
| **Conviction for Contact Sex Offense Against an Adult** | 5 | 1.0% |

42      *United States Sentencing Commission*

Table 6. Non-Contact Sexual Conduct by §2G2.1 Offenders

| Sexual Conduct | N = 512 | % of 512 |
|---|---|---|
| Non-Contact Sex Offenses Against a Minor | 235 | 45.9% |
| Solicitation of a Minor for Images | 88 | 17.2% |
| Solicitation of a Minor for Sex | 72 | 14.1% |
| Sent Pornography to Minors | 164 | 32.0% |
| Other Non-Contact Sex Offenses | 53 | 10.4% |

Next, the Commission analyzed whether the child pornography production offenders had prior convictions for non-contact sex offenses. Of the 512 child pornography production offenders sentenced in fiscal year 2019, nearly five percent (4.9%) had a prior conviction for a non-production child pornography offense (possession, receipt, or distribution). Roughly four percent (4.3%) of child pornography production offenders had a prior conviction for a non-contact sex offense, such as indecent exposure (Table 5, previous page).

Finally, the Commission analyzed the sentencing documents to identify whether the child pornography production offenders engaged in other sexually abusive or exploitative conduct, irrespective of an arrest or prosecution. Nearly half (45.9%) of all child pornography production offenders sentenced in fiscal year 2019 engaged in sexually abusive or exploitative conduct in addition to the production offense (Table 6). Approximately one-third (32.0%) of child pornography production offenders sent pornography to a minor, 17.2 percent solicited a minor for pornographic images (unrelated to the production offense), and 14.1 percent solicited a minor for sexual contact.[50] Approximately ten percent (10.4%) of child pornography production offenders sentenced in fiscal year 2019 also committed some other non-contact sex offense, such as indecent exposure.

# Sentencing Outcomes

## Chapter

# 4

44    *United States Sentencing Commission*

# Sentencing Outcomes

Child pornography production offenders received lengthy sentences in fiscal year 2019, 275 months on average.  The Commission found that proximity, participation, and propensity of child pornography production offenders appear to be key factors that impact sentencing outcomes.

Longer sentences were imposed for offenses involving younger victims, a familial or close relationship between the offender and victim, any sexual contact of a minor prior to or during the instant offense, and the incapacitation or coercion of a minor victim by the offender.

## Proximity and Sentencing Outcomes

The potential for physical harm to a child is greater when the offender is present in the same location as the victim.  Accordingly, in fiscal year 2019, courts sentenced offenders who were present with the minor victim during production to longer sentences than offenders who committed the offense remotely.  Child pornography production offenders in the same location as the victim were sentenced to an average of 302 months, compared to an average of 234 months for remote offenders, a difference of more than five years.

Table 7. Offender Location and Sentence Length
*Fiscal Year 2019*

| Offender Presence | N | Mean Sentence |
|---|---|---|
| Total §2G2.1 Offenders | 512 | 275 |
| Offender Was Present | 311 | 302 |
| Offender Was Not Present | 201 | 234 |

## Offender and Victim Relationship and Sentence Length

The proximity, or closeness of the relationship between an offender and the victim, also appears to affect sentencing outcomes. Child pornography production offenders who had closer relationships to their victim(s) received longer average sentences compared to those offenders with more distant relationships (Table 8). Section 2G2.1 provides a 2-level enhancement for offenders who were parents, relatives, legal guardians, or otherwise maintained custody or care of their victim(s).[51]

When analyzing the relationship between the offender and victim, the Commission found that courts imposed the longest sentences, on average, for child pornography production offenders who were parents of the victim(s) (340 months) followed by offenders who were some other relative of the victim(s) (304 months). Similarly, child pornography production offenders who maintained a position of trust over the minor victims, such as a coach or teacher, received longer average sentences (274 months) than offenders who met their victim(s) online (249 months).

Table 8. Select Offender and Victim Relationships and Sentence Length
*Fiscal Year 2019*

| Relationship to Victim | N | Mean Sentence |
|---|---|---|
| Total §2G2.1 Offenders | 512 | 275 |
| Parent | 93 | 340 |
| Other Relative | 60 | 304 |
| Teacher, Coach, etc. | 37 | 274 |
| Internet Stranger | 181 | 249 |

## Age of Victim and Sentence Length

The proximity of an offender to their victim(s) is also closely associated with having younger victims involved in the production offense.[52]  Section 2G2.1 provides enhancements of 2- or 4-levels based on the age of the victim.  Accordingly, offenses that involved the youngest victims received longer sentences compared to those offenses involving older minor victims.

When analyzing the age of the victims, offenders whose youngest production victim was an infant had the highest average sentence among fiscal year 2019 production offenders (364 months) (Table 9).  On average, offenders who victimized an infant received sentences that were more than a decade longer than production offenders whose youngest victim was a teenager (364 months and 232 months, respectively).  Additionally, offenders whose youngest victim was a toddler or prepubescent also received longer average sentences (330 months and 292 months, respectively) than offenders whose youngest victim was a teenager (232 months).

Table 9.  Age of the Youngest Production Victim and Sentence Length
*Fiscal Year 2019*

| Age of Youngest Victim | N | Mean Sentence |
|---|---|---|
| Total §2G2.1 Offenders | 512 | 275 |
| Infant | 26 | 364 |
| Toddler | 58 | 330 |
| Prepubescent | 223 | 292 |
| Teenager | 194 | 232 |

## Participation and Sentencing Outcomes

Courts appear to consider an offender's level of participation with a minor victim during the offense when imposing sentences. Among fiscal year 2019 child pornography production offenders, courts imposed longer sentences on offenders who had a higher degree of participation with a minor victim, either through sexual contact or the use of coercive tactics to manipulate the victim.

### Sexual Contact During Production

Section 2G2.1 provides an enhancement of 2- or 4-levels if the production offense involved sexual contact or the commission of a sex act.[53] Consistent with the enhancement, courts imposed longer average sentences when an offender or adult co-participant physically sexually contacted a minor victim (307 months) compared to offenses that did not involve sexual contact (221 months) (Table 10). Courts also appear to consider sexual conduct between or among minor victims that does not include the offender or a co-participant when imposing sentences. Offenders who committed child pornography production offenses that involved the victim(s) engaging in sexual contact alone or with another victim were sentenced to 244 months on average, almost two years longer than the average sentences for offenses that did not include sexual contact during production (221 months).

Table 10. Sexual Contact During Production and Sentence Length
*Fiscal Year 2019*

| Level of Contact | N | Mean Sentence |
|---|---|---|
| Total §2G2.1 Offenders | 512 | 275 |
| Offender or co-participant sexually contacted a victim | 285 | 307 |
| Victim(s) engaged in sexual contact | 129 | 244 |
| No sexual contact | 98 | 221 |

**Incapacitation, Coercion, Enticement, or Misrepresentation**

Section 2G2.1 provides a 2-level enhancement if an offender misrepresents their identity to commit the offense.[54]  Offenders who misrepresented themselves to a minor victim received longer average sentences (288 months) compared to offenders who did not use any aggravating form of manipulation or coercion (266 months) (Table 11).

The Commission also examined how courts sentenced offenders who engaged in coercive or manipulative conduct not specifically accounted for in §2G2.1 to secure a minor victim's participation to produce child pornography.  Child pornography production offenders who incapacitated or coerced victims received longer average sentences, compared to offenders who used other means of enticement or did not engage in those behaviors (Table 11).  Child pornography production offenders

who incapacitated a minor victim using drugs or alcohol received an average sentence of 313 months.  Offenders who used coercive tactics such as violence, sextortion, threats, or bullying were sentenced to an average of 291 months, which is more than two years longer than the average sentence for offenders who did not engage in these behaviors (266 months).

Courts also appear to consider whether offenders used other enticements, such as gifts, when imposing sentences on child pornography production offenders.  Offenders who provided these enticements were sentenced to an average of 277 months, which is 11 months longer than offenders who did not use any misrepresentation or coercion to commit the child pornography production offense.

Table 11. Incapacitation, Coercion, Misrepresentation, or Enticement and Sentence Length
 *Fiscal Year 2019*

| Type of Inducement | N | Mean Sentence |
|---|---|---|
| Total §2G2.1 Offenders | 512 | 275 |
| Incapacitation | 23 | 313 |
| Coercion | 103 | 291 |
| Misrepresentation | 99 | 288 |
| Enticement | 79 | 277 |
| None | 307 | 266 |

## Propensity and Sentence Length

Courts imposed longer sentences on production offenders who engaged in child pornography conduct outside of the instant offense or had any other physical sexual contact with a minor victim.  Courts also imposed longer sentences on offenders who had a history of sexual misconduct, including those with a history of non-contact sex offenses and contact sex offenses against adults.

### Child Pornography Conduct Outside of the Production Offense

In fiscal year 2019, production offenders who engaged in child pornography conduct outside of their production offense received longer average sentences than those offenders who did not (Table 12).  Offenders who shared images they produced, possessed or shared images produced by others, or participated in an online community devoted to child pornography or exploitation were sentenced to 289 months, on average, which was nearly four years longer than the 245-month average sentence for those offenders who did not engage in additional child pornography conduct.

Table 12. Propensity to Engage in Child Pornography Conduct or Sexual Exploitation and Sentence Length
*Fiscal Year 2019*

| Level of Contact | N | Mean Sentence |
|---|---|---|
| Total §2G2.1 Offenders | 512 | 275 |
| Offender Engaged in Non-Production Child Pornography Conduct or Sexual Exploitation | 350 | 289 |
| Offender Did Not Engage in Other Child Pornography Conduct or Sexual Exploitation | 162 | 245 |

**Propensity to Engage in Sexual Abuse Outside of the Production Offense**

As discussed previously, §4B1.5 (Repeat and Dangerous Sex Offender Against Minors) contains two enhancements for offenders who commit sex crimes. The first provision under §4B1.5(a) applies if the offender committed the instant offense of conviction after sustaining at least one qualifying sex offense conviction.[55] In fiscal year 2019, 26 child pornography production offenders received the sentencing enhancement under §4B1.5(a) and their average sentence was 387 months, more than 15 years longer than production offenders who did not receive the enhancement (204 months) (Table 13). Section 4B1.5(b) provides a 5-level enhancement for behavior that constitutes a pattern of activity involving prohibited sexual conduct.[56] More than half of the production offenders (51.6%) received the pattern of activity enhancement under §4B1.5(b). The production offenders who received the pattern of activity enhancement were sentenced to an average of 324 months, ten years longer than the average sentence for offenders who did not receive an enhancement under §4B1.5 (204 months).

Table 13. Repeat and Dangerous Sex Offender Enhancement and Sentence Length
*Fiscal Year 2019*

| Chapter Four Enhancement | N | Mean Sentence |
|---|---|---|
| §4B1.5(a) | 26 | 387 |
| §4B1.5(b) | 264 | 324 |
| No Enhancement | 222 | 204 |

*Federal Sentencing of Child Pornography: Production Offenses* 51

Irrespective of a §4B1.5 enhancement, courts appear to account for the presence of a prior sex offense when sentencing child pornography production offenders. Among child pornography production offenders sentenced in fiscal year 2019, those with a prior contact sex offense against a minor or an adult received markedly longer average sentences (334 months and 330 months, respectively) than those offenders with no history of such conduct (267 months) (Table 14). Offenders with prior convictions for non-production child pornography offenses received comparable sentences (331 months) to those offenders who committed a prior contact sex offense.

Table 14. Prior Sex Offense Conviction and Sentence Length
*Fiscal Year 2019*

| Type of Prior Sexual Offense Conviction | N | Mean Sentence |
|---|---|---|
| Total §2G2.1 Offenders | 512 | 275 |
| Contact Sex Offense Against a Minor | 56 | 334 |
| Non-Production Child Pornography Offense | 25 | 331 |
| Contact Sex Offense Against an Adult | 5 | 330 |
| Non-Contact Sex Offense | 22 | 255 |
| No Prior Sex Offense Conviction | 424 | 267 |

# Conclusion

## Conclusion

Child pornography production offenses are serious crimes that memorialize the sexual abuse and exploitation of children.  Offenders who produce child pornography use a wide variety of technology and coercive tactics to manipulate children for the purpose of committing these serious offenses.  The typical child pornography production offense takes one of two forms.  Most commonly, the offender maintains a position of trust over the victim and has physical access to the child during the production of child pornography, which frequently culminates in the offender having sexual contact with the victim during the offense.  Alternatively, a growing proportion of offenders are strangers who initially contact victims remotely through the internet or other mobile technology to produce child pornography.  This report provides insight into how offenders commit child pornography production offenses and highlights the dangers that children face, whether offenders rely upon their proximity, coercive tactics, or online platforms to communicate with victims.

Although most child pornography production offenders receive sentences below their applicable guideline ranges, the serious nature of these offenses generally leads to lengthy sentences.  The average production offender was sentenced to 275 months in fiscal year 2019.  However, sentence lengths vary, at least in part, based on the presence of aggravating factors related to the offenders' proximity to the victim, participation in the offense, and propensity to engage in exploitive behavior.  Longer sentences, on average in excess of 300 months, were imposed for offenses involving infants or toddlers, a familial or close relationship between the offender and victim, any sexual contact of a minor prior to or during the instant offense, and any incapacitation of a minor victim to effectuate the offense.



## For More Information

Visit the Commission's website for additional resources on the child pornography guidelines.

*www.ussc.gov*

## Related Reports



**History of
the Child
Pornography
Guidelines**

**2009**



**Report to the
Congress:
Federal Child
Pornography
Offenses**

**2012**



**Mandatory
Minimum
Penalties for
Federal Sex
Offenses**

**2019**



**Federal
Sentencing
of Child
Pornography:
Non-Production
Offenses**

**2021**

56     *United States Sentencing Commission*

# Appendix

# Appendix A

Appendix A provides the geographic distribution of child pornography production cases. Tables A-1 and A-2 show the district courts with the highest number of production cases, by highest raw number of cases and by highest percentage of the total caseload, respectively. Figure A-1 is a map showing the child pornography production caseload by district in fiscal year 2019.

Of the 512 cases in fiscal year 2019, the five districts with the highest number of child pornography production cases were as follows: 19 cases from the District of Minnesota, 17 cases from the Southern District of Indiana, 17 cases from the Western District of Missouri, 16 cases from the District of Maryland, and 16 cases from the Eastern District of Michigan.

The five districts where child pornography production cases made up the highest percentage of their overall federal caseload were the District of Minnesota (5.1%), the Southern District of Indiana (3.6%), the Central District of Illinois (3.6%), the Middle District of Pennsylvania (3.4%), and the Southern District of Illinois (3.2%).

Table A-1. Top 5 Districts by Number of Cases

| District | # |
|---|---|
| Minnesota | 19 |
| Southern Indiana | 17 |
| Western Missouri | 17 |
| Maryland | 16 |
| Eastern Michigan | 16 |

Table A-2. Top 5 Districts by Percentage of Caseload

| District | % |
|---|---|
| Minnesota | 5.1% |
| Southern Indiana | 3.6% |
| Central Illinois | 3.6% |
| Middle Pennsylvania | 3.4% |
| Southern Illinois | 3.2% |

*Federal Sentencing of Child Pornography: Production Offenses*   59

Figure A-1. §2G2.1 Offenders in Each District
*Fiscal Year 2019*



SOURCE: U.S. Sentencing Commission, 2019 Datafile, USSCFY19.

## Endnotes

1        U.S. Sent'g Comm'n, Report to the Congress:  Federal Child Pornography Offenses (2012), https://
www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-
topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf [hereinafter 2012 Child
Pornography Report].

2        For a review of non-production child pornography offenses, see U.S. Sent'g Comm'n, Federal
Sentencing of Child Pornography:  Non-Production Offenses (2021), https://www.ussc.gov/sites/default/files/
pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf [hereinafter
Non-Production Offenses Report].

3        *Key Facts*, Nat'l Ctr. for Missing and Exploited Child., (Mar. 2, 2021), https://www.missingkids.org/
ourwork/ncmecdata.

4        2012 Child Pornography Report, *supra* note 1, at 107–08.

5        *Id.* at 267.

6        As authorized by Congress, the Commission's numerous research responsibilities include: (1) the
establishment of a research and development program to serve as a clearinghouse and information center for
the collection, preparation, and dissemination of information on federal sentencing practices, (2) the
publication of data concerning the sentencing process, (3) the systematic collection and dissemination of
information concerning sentences actually imposed and the relationship of such sentences to the factors set
forth in section 3553(a) of title 18, and (4) the systematic collection and dissemination of information
regarding the effectiveness of sentences imposed.  28 U.S.C. § 995(a)(12)–(16).

7        Pub. L. No. 108–21, 117 Stat. 650.

8        18 U.S.C. §§ 2251, 2252, 2252A, 2260.

9        18 U.S.C. § 2251(e).

10       The qualifying sex offenses include prior federal convictions under title 18, section 1591, chapter
71, chapter 109A, or chapter 117, or under section 920 of title 10 (article 120 of the Uniform Code of
Military Justice), or state convictions relating to aggravated sexual abuse, sexual abuse, or abusive sexual
conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution,
shipment, or transportation of child pornography, or sex trafficking of children.  18 U.S.C. § 2251(e).

11       *Id.*

12       Pub. L. No. 108–21, § 101, 117 Stat. 650.

13       A 4-level enhancement applies if the offense involved a minor who had not attained the age of 12.
U.S. Sent'g Comm'n, Guidelines Manual, §2G2.1(b)(1)(A) (Nov. 2018) [hereinafter USSG].  A 2-level enhancement
applies if the offense involved a minor who had attained the age of 12 years but not attained the age of 16
years.  USSG §2G2.1(b)(1)(B).

14       A 2-level enhancement applies if the offense involved the commission of a sexual act or sexual
contact.  USSG §2G2.1(b)(2)(A).  A 4-level enhancement applies if the offense involved the commission of a
sexual act and conduct described in 18 U.S.C. § 2241(a) or (b).  USSG §2G2.1(b)(2)(B).

15       A 2-level enhancement applies if the defendant knowingly engaged in distribution of child
pornography.  USSG §2G2.1(b)(3).

16    A 4-level enhancement applies if the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence, or an infant or toddler.  USSG §2G2.1(b)(4).

17    A 2-level enhancement applies if the defendant was a parent, relative, or legal guardian of the minor involved in the offense, or if the minor was otherwise in the custody, care, or supervisory control of the defendant.  USSG §2G2.1(b)(5).

18    A 2-level enhancement applies if, for the purpose of producing sexually explicit material or for the purpose of transmitting such material live, the offense involved (A) the knowing misrepresentation of a participant's identity to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in sexually explicit conduct; or (B) the use of a computer or an interactive computer service to (i) persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in sexually explicit conduct, or to otherwise solicit participation by a minor in such conduct; or (ii) solicit participation with a minor in sexually explicit conduct.  USSG §2G2.1(b)(6).

19    USSG §2G2.1(d)(1).  *See also* USSG §§3D1.1 (Procedure for Determining Offense Level on Multiple Counts), 3D1.2 (Groups of Closely Related Counts), 3D1.3 (Offense Level Applicable to Each Group of Closely Related Counts), 3D1.4 (Determining the Combined Offense Level), and 3D1.5 (Determining the Total Punishment).

20    *See, e.g.*, United States v. Peck, 496 F.3d 885, 890 (8th Cir. 2007) (noting that the defendant, who was convicted of a single count of production of child pornography, received a 3-level increase in his offense level under §2G2.1(d)(1) because of relevant conduct involving multiple victims).

21    USSG §2G2.2(c).

22    USSG §5G1.1(a).

23    USSG §4B1.5(a), (b).

24    If an offender's final offense level or criminal history category resulting from a guidelines determination before application of §4B1.5(a) exceeds those in §4B1.5(a), then no additional enhancement would apply.

25    For purposes of §4B1.5, "prohibited sexual conduct" means any of the following: (i) any offense described in 18 U.S.C. § 2426(b)(1)(A) or (B); (ii) the production of child pornography; or (iii) trafficking in child pornography only if, prior to the commission of the instant offense of conviction, the defendant sustained a felony conviction for that trafficking in child pornography.  "Prohibited sexual conduct" does not include receipt or possession of child pornography.  The defendant engaged in a "pattern of activity" involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor.  An occasion of prohibited sexual conduct may be considered for purposes of §4B1.5(b) without regard to whether the occasion (i) occurred during the course of the instant offense; or (ii) resulted in a conviction for the conduct that occurred on that occasion.  USSG §4B1.5, comment. (n.4).

26    *See* USSG §§5D1.1(a)(1) (Imposition of a Term of Supervised Release) & 5D1.2(b) (Term of Supervised Release) (policy statement "recommend[ing]" the "statutory maximum term of supervised release" for all offenders convicted of "a sex offense," including a child pornography offense).

27    Two offenders in this analysis account for only 0.3% of production offenders and therefore are not visible in this graphic.  One offender was convicted under 18 U.S.C. § 2244 (Abusive Sexual Contact) and one offender was convicted under 18 U.S.C. § 1470 (Transfer of Obscene Material to Minors).  Both offenders engaged in production conduct that was relevant conduct to their instant offense.

28    Appendix A provides the geographic distribution of child pornography production cases sentenced in fiscal year 2019.

62      *United States Sentencing Commission*

29      In fiscal year 2019, 61 offenders were sentenced under §2G2.1 via cross reference from §2G2.2 (Trafficking in Material Involving the Sexual Exploitation of a Minor; Receiving, Transporting, Shipping, Soliciting, or Advertising Material Involving the Sexual Exploitation of a Minor; Possessing Material Involving the Sexual Exploitation of a Minor with Intent to Traffic; Possessing Material Involving the Sexual Exploitation of a Minor), 28 offenders were cross-referenced from §2G1.3 (Promoting a Commercial Sex Act or Prohibited Sexual Conduct with a Minor; Transportation of Minors to Engage in a Commercial Sex Act or Prohibited Sexual Conduct with a Minor; Travel to Engage in Commercial Sex Act or Prohibited Sexual Conduct with a Minor; Sex Trafficking of Children; Use of Interstate Facilities to Transport Information about a Minor), one offender was cross-referenced from §2G3.1 (Importing, Mailing, or Transporting Obscene Matter; Transferring Obscene Matter to a Minor; Misleading Domain Names), and one offender was cross-referenced from §2X2.1 (Aiding and Abetting).

30      2012 Child Pornography Report, *supra* note 1, at 41-42.

31      Non-Production Offenses Report, *supra* note 2, at 17.

32      2012 Child Pornography Report, *supra* note 1, at 260.

33      *Id.*

34      *Id.* at 260–62.

35      Cases with sentences of 470 months or greater (including life) were included in the sentence average computations as 470 months. The information presented in this analysis includes conditions of confinement as described in §5C1.1.

36      *See id.*

37      Variance cases are those in which the sentence was outside the guideline range and where the court did not cite any reason for departure from the *Guidelines Manual* for the sentence.

38      "Government sponsored" departures include cases in which a reason for the sentence indicated that the prosecution initiated, proposed, or stipulated to a sentence outside of the guideline range, either pursuant to a plea agreement or as part of a non-plea negotiation with the defendant. Substantial assistance motions filed by the prosecution are categorized separately.

39      There are two types of "substantial assistance" motions filed by the prosecution—the first seeks a downward departure below the applicable guideline range, and the second seeks a downward departure below a statutory mandatory minimum sentence. *Compare* USSG §5K1.1, *with* 18 U.S.C. § 3553(e).

40      In three child pornography production cases, there was no production victim. In two cases the offenders acted as accessories in a production offense and one case involved attempted production with no identifiable victim.

41      For this report, the Commission relied on information from the Centers for Disease Control and Prevention and the National Library of Medicine of the National Institutes of Health to categorize toddlers as age one to three. *See* Ctrs. for Disease Control & Prevention, Positive Parenting Tips for Healthy Child Development Toddlers (1–2 Years of Age) (2021), https://www.cdc.gov/ncbddd/childdevelopment/ positiveparenting/pdfs/toddlers-1-2-w-npa.pdf; Ctrs. for Disease Control & Prevention, Positive Parenting Tips for Healthy Child Development Toddlers (2–3 Years of Age) (2021), https://www.cdc.gov/ncbddd/ childdevelopment/positiveparenting/pdfs/Toddlers-2-3-w-NPA.pdf; U.S. Nat'l Libr. of Med., *Toddler Development*, MedlinePlus (Aug. 2, 2021), https://medlineplus.gov/toddlerdevelopment.html.

42      2012 Child Pornography Report, *supra* note 1, at 267.

43      The infants and toddlers in this category were in the presence of a co-participant who facilitated the

remote production.

44      The age of the youngest victim is unknown in two offenses where the offender communicated with the victims in person.

45      *See supra* Figure 13.

46      U.S. Dep't of Just., Sextortion: Recognize, Prevent, Protect (2019), https://www.justice.gov/file/1317551/download.

47      For the purposes of this report, the other forms of bullying are non-violent or non-sexual threats or pressure.

48       2012 Child Pornography Report, *supra* note 1, at 264.

49      Some offenders had more than one type of prior contact sex offense against a minor. Therefore, the percentages exceed 37.5%.

50      The pornography sent to a minor included pornography depicting the offender, other adult pornography, or child pornography.

51      USSG §2G2.1(b)(5).

52      *See supra* Figure 17.

53      USSG §2G2.1(b)(2).

54      USSG §2G2.1(b)(6).

55      USSG §4B1.5(a).

56      USSG §4B1.5(b).



**United States Sentencing Commission**

www.ussc.gov

THURGOOD MARSHALL FEDERAL JUDICIARY BUILDING
ONE COLUMBUS CIRCLE N.E.
SUITE 2-500, SOUTH LOBBY
WASHINGTON, DC 20002-8002

*This document was produced and published at U.S. taxpayer expense.*

