IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 23-cr-00419-RMR

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. CHRISTOPHER CARL MEIER,

    Defendant.

---

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION FOR VARIANT SENTENCE OF 240 MONTHS**

---

The United States of America ("the government"), by and through Matthew T. Kirsch, Acting United States Attorney for the District of Colorado, and Alecia L. Riewerts, Assistant United States Attorney, hereby responds to the defendant's Motion for Variant Sentence of 240 Months [ECF #33] ("Def. Sent. Mot."). Numerous arguments made by the defendant were addressed in the government's Sentencing Statement [ECF #34]; however, the government responds herein to the defendant's arguments related to the sentencing guidelines and unwarranted sentencing disparities. The defendant asks this Court to sentence the defendant to 240 months imprisonment. Such a sentence does not appropriately reflect the gravity of the offense conduct.

**I. THE DEFENDANT'S HISTORY AND CHARACTERISTICS**

The government acknowledges that the defendant is a victim of childhood bullying and sexual assault. Clearly, no child should have to suffer abuse of any kind. It must be acknowledged, however, that countless humans cope with childhood abuse

1

without going on to engage in the sexual exploitation of minors and the distribution of child pornography. During his offense conduct, the defendant showed absolutely no compassion, empathy, or consideration for the negative long-term consequences for the victims depicted in the child sexual abuse imagery he produced and distributed.

## II. THE SENTENCING GUIDELINES

The Tenth Circuit has explained that "[t]he purpose of the sentencing guidelines is to eliminate disparities among sentences nationwide." *United States v. Franklin*, 785 F.3d 1365, 1371 (10th Cir. 2015) (citations and quotations omitted) (upholding a sentence of 100 years, within the advisory sentencing guideline range of life imprisonment, where the defendant was convicted at trial of advertisement, distribution, receipt, and possession of child pornography); *see also United States v. Garza*, 1 F.3d 1098, 1100 (10th Cir. 1993) ("Congress chose to avoid unwarranted disparities through a guideline system which considered various facts concerning the offense and the offender."). It's the government's position that a sentence within the advisory sentencing guideline range, when it's not unreasonable, minimizes these disparities.

The defendant argues that the sentencing guidelines for child pornography offenses are not entitled to deference by this Court. The defendant primarily focuses his arguments on attacks commonly made with regard to § 2G2.2 of the child pornography guidelines. As described in the "United States' Response and Objections to Presentence Investigation Report" [ECF #32], it is the government's position that this case is governed by USSG § 2G2.1. The Tenth Circuit, among others, has affirmed sentences as presumptively reasonable that fall within § 2G2.1's recommended guideline range. *United States v. Grigsby*, 749 F.3d 908 (10th Cir. 2014); *see also*

*United States v. Pappas*, 715 F.3d 225 (8th Cir. 2013); *United States v. Schuster*, 706 F.3d 800, 808 (7th Cir. 2013) (deference to Congress is appropriate because of its study of the child pornography problem). In *Grigsby*, the Tenth Circuit cited the 2012 Sentencing Commission Report referenced in the defendant's motion and below, stating "sentencing in federal production cases has been less controversial." 749 F.3d at 911.

Turning, however, to the defendant's arguments with regard to § 2G2.2, the Supreme Court's decision in *Kimbrough v. United States*, 552 U.S. 85 (2007), does not require district courts to evaluate the history and development of a particular guideline before sentencing within, or outside, the range it produces. Should a full understanding of the evolution of USSG § 2G2.2 be deemed relevant, the 2009 Sentencing Commission Report provides an account of changes predating the report. *2009 U.S. Sentencing Commission Report: History of the Child Pornography Guidelines* ("2009 Sent. Comm. Rep.").[1]

As detailed in the 2009 Sentencing Commission Report, the government asserts that the current version of USSG § 2G2.2 is a product and reflection of the Sentencing Commission's institutional role and empirical study. *See also United States v. Cunningham*, 680 F.Supp.2d 844, 849-51 (N.D. Ohio 2010). As stated in the 2009 report, "in amending the child pornography guidelines over the years, the Commission has reviewed sentencing data, considered public comment on proposed amendments, conducted public hearings on proposed amendments, studied relevant literature, and considered pertinent legislative history." 2009 Sentencing Commission Report at 7.

---

1 Available at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-and-surveys/sex-offenses/20091030_History_Child_Pornography_Guidelines.pdf.

3

Congressional involvement in the formation and development of § 2G2.2 does not render the guideline less worthy of consideration, as the Sentencing Reform Act expressly contemplated such participation by Congress. *Id.* at 5-6.

A well-reasoned rejoinder to many of the arguments raised by the defendant regarding the USSG § 2G2.2 guidelines can be found in the letter "Response to 'A Reluctant Rebellion'" ("Reluctant Rebellion Response Letter") which was written by Alexandra Gelber, who is currently the Deputy Chief for Policy and Legislation of the Child Exploitation and Obscenity Section.[2] The letter, which takes up in part arguments put forth by Mr. Troy Stabenow referenced in the defendant's motion for a downward variance, addresses aspects of the guideline enhancements that are far from novel, arguing that "it is completely logical in child exploitation cases that a defendant who had a larger collection, who had pictures of younger children, or who had violent pictures has committed a more serious crime than someone who does not." Reluctant Rebellion Response Letter at 12. The letter also describes how the Sentencing Commission anticipated that some enhancements would apply in "nearly every case" and therefore "established a lower base offense level to account for this." *Id.* The Sentencing Commission thereby "negated any impact that would be caused by the frequent application of those enhancements." *Id.* at 13. The government therefore urges the Court to recognize the egregious crimes that the defendant has committed and reject the defendant's argument that the sentencing enhancements are invalid.

---

2 The letter can be found online at
http://www.ussc.gov/sites/default/files/pdf/training/annual-national-training-seminar/2010/009c_Reluctant_Rebellion_Response.pdf.

A.   Computer Use Enhancement

The defendant seeks a downward variance because the enhancement applied to more than 95% of child pornography offenders. Def. Sent. Mot. at 7-8. There is significant irony to the defendant's claim. The penalty was enacted to curb the explosion of child pornography on the Internet. Indeed, there is no other area of criminal law where, when severe crime becomes more common, the penalties are reduced. This argument also ignores the purpose of the enhancement.

Due to the wide dissemination and instantaneous transmission, computer-assisted trafficking of child pornography is extremely difficult for law enforcement officials to eradicate. *United States v. Lebovitz*, 401 F.3d 1263, 1271 (11th Cir. 2005) (quoting H.R.Rep. No. 104-90, at 3-4 (1995), as reprinted in 1995 U.S.C.C.A.N. 759, 760-61). Thus, the enhancement for use of a computer aims at punishing a distinct harm beyond the possession of child pornography. *United States v. Tenuto*, 593 F.3d 695, 698-99 (7th Cir. 2010).

As the Second Circuit observed in *United States v. Reingold*, "the use of a computer is not essential to the act of distributing child pornography. A person can traffic in child pornography without using a computer much like one could commit a robbery without the use of a gun." 731 F.3d 204, 226 (2d Cir. 2013); *see also United States v. Kiefer*, 760 F.3d 926, 931 (9th Cir. 2014) (finding no double counting for the inclusion of this enhancement). Similarly, a person can possess child pornography without a computer. If the defendant had possessed printed material, the seizure of those items would put them out of circulation permanently. Now, however, the government can access numerous child pornography images online during the course

5

of an investigation, yet those images still exist in cyberspace. The images will continue to be circulated, and the harm to the victims will never end.

To properly calculate the guidelines and arrive at a just sentence for the defendant, the Court should not vary downward based on this sentencing enhancement, as a computer clearly was used to commit this offense. While this enhancement may apply to a large number of cases, there is simply no reason to not apply this enhancement and/or mitigate the defendant's sentence on this ground should the Court determine that the § 2G2.2 guidelines are applicable.

B.   600 Images or More Enhancement

The defendant further suggests that since "possession of many images is incredibly common in child pornography cases," that the five-level enhancement in USSG §2G2.2(b)(7)(D) over-represents the seriousness of this crime. Def. Sent. Mot. at 8. The government strongly disagrees.

Section 2G2.2(b) provides for graduated enhancements based on the presence of a number of aggravating factors, including the number of images a defendant possesses. This section of the advisory sentencing guidelines calls for a two-level enhancement if a defendant possesses more than ten but less than 150 images, a three-level enhancement for possessing between 150 and 300 images, a four-level enhancement for possessing between 300 and 600 images, and a five-level enhancement for 600 or more images. Thus, the guidelines consider defendants who possess more images to be more culpable than those who possess fewer images. That is only logical. The guidelines, however, essentially cap a defendant's culpability at 600 images.

6

Under the guidelines, a defendant who possesses 600 images of child pornography winds up with the same adjusted offense level as a defendant who possessed thousands of images.  The Sentencing Commission recognizes that the guidelines may under-represent the number of victims depicted.  USSG §2G2.2, Application Note 4(b)(i).  In such a case, an upward departure may be warranted.  *Id*.

It may be true that almost every child pornography defendant who comes before the Court possesses more than 600 images.  Ordinarily, only the most prolific possessors (i.e., the most serious offenders) are prosecuted federally.  That aside, this is not a case in which the defendant stands convicted of possession of child pornography—he engaged in far more egregious conduct, which the defendant does not dispute.  The government strongly encourages the Court to reject defendant's argument that this enhancement should be disregarded should the Court decide to follow the 2G2.2 guidelines.

The Sentencing Commission has had the opportunity to study and reflect further on the child pornography guidelines over the last decade.  *See* Sentencing Commission's Report to Congress: Federal Child Pornography Offenses[3] ("2012 Report"); *see also* Federal Sentencing of Child Pornography:  Non-Production Offenses[4] ("2021 Report").  The 2012 Report, which examined federal sentencing policy in child pornography cases, focused primarily on non-production offenses under USSG § 2G2.2.  The 2012 Report, at its outset and throughout, confirms the extreme and

---

[3] Available at http://www.ussc.gov/news/congressional-testimony-and-reports/sex-offense-topics/report-congress-federal-child-pornography-offenses.

[4] Available at https://www.ussc.gov/research/research-reports/federal-sentencing-child-pornography-non-production-offenses.

multifaceted damage caused by child pornography. The emphasis at the outset of the 2012 Report on the terrible impact of child pornography brings into clearer focus what the courts have known for some time; that child pornography has a highly destructive impact on the most vulnerable segment of society which lasts forever.  The 2012 Report recommends that sentencing be focused on "content, community, and conduct." 2021 Report at 3.  The 2021 Report "provides updated data from fiscal year 2019 regarding content, community, and conduct."  *Id.*  While the 2021 Report reflects that some of the sentencing enhancements are no longer are helpful in distinguishing among offenders, the Sentencing Commission noted additional factors for a Court to consider at sentencing, which it found to be helpful in determining the level of danger a particular offender poses to the community:  (1) the content of the offender's child pornography collection and nature of the offender's collecting behavior; (2) the offender's degree of involvement with other offenders, particularly in an Internet community devoted to child pornography and child sexual exploitation; and (3) the offender's engagement in sexually abusive or exploitative conduct in addition to the child pornography offense.  *Id.*

The 2021 Report explored whether participation in an online community or "aggravating conduct" (to include noncontact sex offenses, specifically any illegal sexually abusive conduct not involving actual or attempted physical contact with a victim, such as soliciting a minor online and prior non-production child pornography offenses); it found that "[c]onsistent with the Commission's recommendations in the 2012 Child Pornography Report, participation in a child pornography community and engaging in aggravating conduct did impact the sentence length for non-production child pornography offenders."  2021 Report at 39, 45.  The 2021 Report determined that

"[o]ffenders who participated in a child pornography community (without aggravating conduct) had slightly higher sentences" than offenders who had not participated in a child pornography community. *Id.* at 45. Significantly, "[o]ffenders who engaged in aggravating conduct received a substantially lower rate of downward variances (43.3% of cases), with a much higher rate of (44.3%) receiving a sentence within the guideline range compared to offenders without aggravating conduct." *Id.* at 45. The 2021 Report went on to pronounce "[i]ndeed, these offenders, who are arguably the most culpable among non-production child pornography offenders, received within-guideline range sentences at a rate that approaches the rate of within-guideline range sentences for the overall federal offender population in fiscal year 2019 (51.4%)." *Id.*

The defendant's conduct, even under the criteria suggested by the Sentencing Commission in the 2012 and 2021 Reports, emphasizes the heinous nature of the defendant's conduct. The defendant engaged in an online community, specifically a high degree of involvement with other offenders on Website A, and also engaged in "aggravating conduct," specifically the sexual exploitation of dozens of minors, as extensively documented in the final Presentence Investigation Report [ECF #35] and the government's sentencing documents filed in this case. Further distinguishing the defendant, he also has a prior non-production child pornography conviction.

In the nearly ten years since the 2012 Report, Congress has not acted and therefore the current sentencing guidelines can and should be this Court's guide. On balance, if the Court is inclined to jettison those sentencing enhancements the Sentencing Commission has criticized as being ubiquitous, it should consider the factors the Sentencing Commission says should be taken into account, but are not.

Regardless, the factors delineated in 18 U.S.C. § 3553(a), as described in detail in the government's Sentencing Statement, support a sentence of 40 years imprisonment.

### III. UNWARRANTED SENTENCING DISPARITIES

The defendant asks this Court to sentence the defendant to 240 months imprisonment based in part on the sentences in cases involving other dark web administrators, users, content-generators, and distributors prosecuted nationwide. Def. Sent. Mot. at 10-14. The Tenth Circuit cautions against comparisons between individual cases because "[n]o two cases are identical, and comparison of an individual sentence with a few counsel-selected cases involving other defendants sentenced by other judges is almost always useless." *Franklin*, 785 F.3d at 1372 (citations and quotations omitted). However, given that the defendant has referenced numerous cases in his sentencing motion, the government wishes to bring additional examples of sentences imposed in cases to the Court's attention.

*United States v. Minh Thong*, 14-cr-00027-REB, is a case prosecuted in this district involving a defendant who accessed minors through video chat websites online and utilized videos depicting a minor female to entice minor males to engage in sexually explicit conduct, which he then recorded and collected. Plea Agreement [ECF #61] at 16-23. The computer forensic review revealed that defendant Thong had approximately 100-120 victims. *Id.* at 21. Nine victims of defendant Thong's conduct were able to be identified; they ranged in age from 12-16 years old at the times the videos were created. *Id.* The defendant was sentenced to 292 months imprisonment and 15 years of supervised release. Judgment [ECF #92] at 2-3. Defendant Thong is distinguishable from defendant Meier in that there was no evidence that defendant Thong distributed

the child pornography that he created nor did he have a prior child pornography conviction. *Id.* at 23, 25.

A comparable case in terms of being a member of an online community dedicated to the sexual exploitation of minors is *United States v. Arin Caleb Ellis.*[5] Defendant Ellis was a member of several online groups dedicated to the online sexual exploitation of children and trafficking in child pornography imagery. Defendant Ellis conspired with others to create sexually explicit content depicting minor victims; the online offenders strategized with one another to improve their criminal tradecraft. Defendant Ellis also posed as a minor child while engaging online with minors. The content he produced was shared with other members of the online groups. Defendant Ellis potentially targeted thousands of minors. He was sentenced to 35 years imprisonment and lifetime supervised release.

The defendant is similarly situated to the defendant in *United States v. James Patrick Burns,* who created sexually explicit conduct with more than 100 minors and distributed that content to other offenders on the dark web.[6] To be clear, defendant Burns went to trial and his conduct involved threatening minors to produce child pornography, which distinguishes his offense conduct from defendant Meier's. Defendant Burns was sentenced to 65 years imprisonment and lifetime supervised release. Notably, defendant Burns was also a registered sex offender when he engaged in this conduct.

---

5 Available at https://www.justice.gov/usao-mdfl/pr/jacksonville-medical-records-technician-sentenced-35-years-sexually-exploiting.

6 Available at https://www.justice.gov/usao-nv/pr/registered-sex-offender-sentenced-sextorting-numerous-minors.

## IV. CONCLUSION

The government's recommended sentence of 40 years imprisonment is appropriate. The defendant engaged in the distribution of child pornography to numerous members of online communities dedicated to trafficking in child pornography. The child pornography the defendant distributed depicted dozens of minor boys he himself had sexually exploited. Not only does the production and distribution of child pornography devastate individual children, participating in an online community of this nature undermines all of society by perversely validating, both for this defendant and the individuals with whom he communicated online, the sexual exploitation of children. As acknowledged by the defendant, this conduct is reprehensible. Def. Sent. Mot. at 15.

A guideline sentence of 40 years imprisonment fairly reflects the factors to be considered under 18 U.S.C. § 3553(a), including the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence to reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence to criminal conduct, protect the public from future crimes of the defendant, and avoid unwarranted sentencing disparities.

Respectfully submitted,

MATTHEW T. KIRSCH
Acting United States Attorney

By:   *s/ Alecia L. Riewerts*
ALECIA L. RIEWERTS
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
E-mail: Alecia.Riewerts@usdoj.gov
Attorney for Government

## CERTIFICATE OF SERVICE

   I hereby certify that on this 7th day of November, 2024, I electronically filed theforegoing **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR VARIANT SENTENCE OF 240 MONTHS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email address:

Stephanie Snyder
Email: Stephanie_Snyder@fd.org

                *s/ Alecia L. Riewerts*
                ALECIA L. RIEWERTS
                Assistant U.S. Attorney
                U.S. Attorney's Office
                1801 California Street, Suite 1600
                Denver, CO 80202
                Telephone: 303-454-0100
                E-mail: Alecia.Riewerts@usdoj.gov
                Attorney for Government